CITY OF AUSTIN, Appellant,

v.

Ray L. ENDER, Appellee.

No. 03–00–00286–CV.

Court of Appeals of Texas,
Austin.

Oct. 5, 2000.

Robin Sanders, Asst. City Atty., Austin, for appellant.

Gregory K. Zaney, Austin, for appellee.

Before Chief Justice ABOUSSIE, Justices KIDD and B.A. SMITH.

BEA ANN SMITH, Justice.

The City of Austin brings an interlocutory appeal contending that the district court erroneously denied its plea to the jurisdiction. *See* Tex.Civ.Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2000). Raising a single issue, the City argues that the district court did not have subject matter jurisdiction over Ender's whistleblower lawsuit. We will affirm the district court's denial of the City's plea to the jurisdiction.

### Background

From May 3, 1987 to May 20, 1995, Ender was employed by the Austin Police Department as a motorcycle officer. On May 1, 1995, Ender's supervisor, Senior Sergeant Sam Warren, threatened him with a job transfer allegedly because of his low activity in writing traffic tickets. Ender believed that Warren was competing with other shifts in the motorcycle division to see who could write the most tickets and, along with Warren's supervisor Deputy Chief Pulatie, maintained an informal system that evaluated officers with regard to how many tickets they wrote. Ender responded to Warren's threat by informing him that ticket quotas were illegal.[1] Also on May 1, Ender reported to Captain Joe Riffe that Warren was threatening to transfer him for not issuing enough tickets and that any such ticket quota system was illegal. On May 5, Ender reported the alleged illegal ticket quota system to an assistant city attorney. On May 14, Ender

1. *See* Act of June 16, 1991, 72d Leg., R.S., ch. 657, 1991 Tex .Gen.Laws 2406 (statutory provision in effect at time of Ender's report appeared at Tex.Rev.Civ.Stat.Ann. art. 6701d– 25; current provision at Tex.Transp.Code Ann. § 720.002 (West 1997)) (prohibiting use of ticket quota system).

also reported Warren's threat of transfer to Pulatie· and informed him that the ticket quota system was illegal. Finally, on May 19, Ender reported to the Department's Internal Affairs Division that Warren had threatened to transfer him under an illegal ticket quota system. On May 20, Ender was transferred to the Patrol Division.

On June 7, Ender initiated the formal grievance process. In his own handwriting, he completed the Department's fill-in-the-blank grievance form. Ender completed the first section which asked for identification including name, employee number, date, division, immediate supervisor, date of the incident and any witnesses. In the second section, titled "Describe Grievance," Ender wrote the following:

> I was transferred on May 20, 1995 from my position as a motorcycle patrol [officer] to the patrol division David 300 series. I believe my transfer was unlawful pursuant to V.C.S. 6701D–25, which prohibits ticket quotas regarding traffic offenses. I was told by S. Sgt. S. Warren that I was being transferred due to low "activity" not writing enough hazardous tickets.

In the third section, titled "Describe How This Grievance Could Be Resolved," Ender wrote the following:

> Being placed back on motorcycle patrol and S. Sgt. S. Warren transferred as a supervisor from motorcycle patrol.

The form included a notation about when the grievance was forwarded to a supervisor and included the supervisor's initials. Finally, Ender signed the form on the employee signature line. After thirty-one days passed and the Department had not ruled on his grievance, Ender filed suit in

district court alleging a statutory whistle-blower claim.

In the lawsuit, Ender alleged that he suffered retaliation in the form of a transfer in job assignments from the Motor Division to the Patrol Division with the loss of certain benefits. He alleged that he observed an illegal ticket writing quota system and promptly reported the illegal system in good faith to an appropriate law enforcement authority in accordance with the Whistleblower Act.[2] He claimed that he timely filed a grievance with the Department and because thirty-one days had passed since filing his grievance and the Department had not rendered a final decision, he was authorized to sue the City under the Whistleblower Act.[3] Ender requested that after a hearing the district court permanently enjoin the Department from further discrimination due to the reporting of violations of law and return him to his former position in the motorcycle division.

The City answered and moved for summary judgment. The City claimed that Ender was transferred because of job performance problems, which admittedly included low ticket-writing productivity. In its motion for summary judgment, the City claimed that as a matter of law Ender's reports did not cause his transfer. The district court granted summary judgment in favor of the City. On appeal, this Court reversed the judgment holding that the City failed to conclusively prove that Ender's reports did not cause his transfer and remanded the cause to the district court for further proceedings. *See Ender v. City of Austin*, No. 03–97–00329–CV, 1997 WL 658986 (Tex.App.—Austin October 23, 1997, no pet. h.) (not designated for publication).

**2.** *See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex.Gen.Laws 583, 610. This provision was amended in 1995 and effective June 15, 1995. For adverse personnel action that occurred before the effective date of the 1995 amendments the former law is continued in effect. *See* Act of May 25, 1995, 74th Leg., R.S., ch. 721, § 11, 1995 Tex.Gen.Laws

3812, 3814. In this case, the former law applies. The current amended version appears at Tex.Gov't Code Ann. § 554.002 (West Supp.2000).

**3.** *See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws. 583, 610 (current statutory provision appears at Tex.

After remand, the City filed a motion titled "plea to the jurisdiction, motion for summary judgment, and/or motion for no evidence summary judgment." The City contended that the district court lacked subject matter jurisdiction because, under the statutory scheme of the Whistleblower Act, Ender failed to exhaust the City's grievance and appeal procedures before filing suit.[4] Specifically, the City contended that despite Ender's timely filed grievance and his many reports that he believed he was subjected to an illegal ticket quota system, he failed to present to the City by way of a written grievance any claim asserting retaliation or discrimination for reporting a violation of law. The City argued that because Ender did not first present a specific claim of retaliation or discrimination to the City he failed to exhaust the City's grievance procedures regarding such a claim and the district court was without jurisdiction over the whistleblower claim. The district court denied the City's plea to the jurisdiction and the City timely appeals.

### Discussion

On appeal, the City raises the same issue it raised below—that the district court did not have subject matter jurisdiction over the lawsuit because Ender did not specifically present a whistleblower claim in a written grievance through the Department's formal grievance process before filing suit. The City argues that because Ender's written grievance did not contain any reference to discrimination or retaliation he did not meet the statutory requirement that he first exhaust the City's grievance process before filing suit. ▇▇▇ A district court's jurisdiction over the subject matter of a case is determined solely from the good faith allegations found in the plaintiff's pleadings. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). The plaintiff must allege facts that

affirmatively demonstrate the court's jurisdiction to hear the cause. *Richardson v. First Nat'l Life Ins. Co.*, 419 S.W.2d 836, 839 (Tex.1967). Unless the petition affirmatively demonstrates an absence of jurisdiction, the trial court must construe the petition liberally in favor of jurisdiction. *See Peek v. Equipment Serv. Co.*, 779 S.W.2d 802, 804 (Tex.1989). Good faith allegations are to be taken as true, unless the defendant pleads and proves that the petition's allegations were fraudulently made to confer jurisdiction. *Flowers v. Lavaca County Appraisal Dist.*, 766 S.W.2d 825, 827 (Tex.App.—Corpus Christi 1989, writ denied). If a trial court lacks subject matter jurisdiction, it has no discretion and must dismiss the case. *Id.*

▇▇▇ We review the district court's determination of subject matter jurisdiction *de novo. Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). The pleadings relevant to a review of a plea to the jurisdiction include amended petitions, the plea to the jurisdiction, and responses filed in connection with a defendant's plea to the jurisdiction. *See Janik v. Lamar Consol. Indep. Sch. Dist.*, 961 S.W.2d 322, 324 (Tex.App.—Houston [1st Dist.] 1997, writ denied). Our review included Ender's first amended petition, the City's plea to the jurisdiction and the evidence attached to the motion as well as Ender's response and affidavit in opposition to the motion. We note that the City did not allege or present any evidence that Ender's jurisdictional allegations were fraudulent or were not made in good faith.

The exhaustion provision of the whistleblower statute in effect at the time Ender was transferred provided: (a) a local government employee must exhaust the government's grievance procedures before suing under the Act; and (b) the employee must invoke the grievance procedure not later than the 90th day after the date on which the alleged violation of this chapter

Gov't Code Ann. § 554.006 (West Supp. 2000)).

**4.** *See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws. 583, 610

(current amended version appears at Tex.

either occurred or was discovered by the employee through reasonable diligence.[5] Additionally, the statute provided that exhaustion of the grievance process is not required if a final decision is not rendered before the thirty-first day after the date the employee initiated the grievance. *Id.*

■ Although Ender's handwritten grievance did not include the words "retaliation" or "discrimination," he reported repeatedly that he was being transferred on an illegal basis. The statute does not require an employee to use particular words when filing a grievance nor will we impose such a requirement. Additionally, in the section suggesting ways to resolve his grievance, Ender asked to be returned to his former position as a motorcycle officer. This is the type of remedy typically sought under a whistleblower claim.[6]

■ In addressing the purpose of the exhaustion statute, we have noted that "requiring the exhaustion of grievance and appeal processes as provided in the whistleblower statute encourages compliance through voluntary resolution, conference, conciliation and informal processes other than litigation." *See Gregg County v. Farrar,* 933 S.W.2d 769, 773 (Tex.App.—Austin 1996, writ denied) (citing *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 486 (Tex.1991)). Additionally, this Court has recognized several policies served by the exhaustion requirement:

> An eminently practical reason for requiring exhaustion of remedies is that the complaining party may be successful in vindicating his rights in the administrative process and never have to resort to court. Notions of administrative autonomy require further that the agency be given first opportunity to discover and correct its own errors.

Gov't Code Ann. § 554.006(a) (West Supp. 2000)).

**5.** *See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex.Gen.Laws 583, 610 (current statutory version appears at Tex.Gov't Code Ann. § 554.006(a) (West Supp.2000)).

*Id.* (quoting *Texas Air Control Bd. v. Travis County,* 502 S.W.2d 213, 215–16 (Tex. App.—Austin 1973, no writ)). Indeed, the Whistleblower Act has a twofold purpose: (1) protecting public employees from retaliation by their employer when, in good faith, an employee reports a violation of law, and (2) securing lawful conduct on the part of those who direct and conduct the affairs of public bodies. *See Travis County v. Colunga,* 753 S.W.2d 716, 718–19 (Tex.App.—Austin 1988, writ denied). As we have noted, the legislature intended that the governmental entity be afforded the opportunity to correct its own errors by resolving disputes before being subjected to the expense and effort of litigation. *See Gregg County,* 933 S.W.2d at 775 (citing *City of San Antonio v. Heim,* 932 S.W.2d 287, 293 n. 12 (Tex.App.—Austin 1996, writ denied)).

■ Ender reported to various supervisors up his chain of command that he was being subjected to an illegal ticket writing quota system. He also reported the illegal quota system outside his chain of command by reporting the incident to a City attorney and to the Department's internal affairs division. The City asserts that Ender complained that he was transferred for writing too few tickets, rather than in retaliation for reporting that the quota system applied to him was illegal. The grievance form asked him to describe his grievance in his own words. Ender stated: "I believe my transfer was unlawful pursuant to V.C.S. 6701D–25, which prohibits ticket quotas regarding traffic offenses." The causation for Ender's transfer may be an issue in the trial of this cause. However, we hold that the description of his grievance, coupled with Ender's numerous reports of the illegality of the "quota system" being applied to him, gave the City sufficient notice of a potential whistleblower claim to satisfy the exhaus-

**6.** *See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex.Gen.Laws 583, 610 (current amended statutory version appears at Tex.Gov't Code Ann. § 554.003(b)(1) (West Supp.2000)).

tion requirement of the statute. We refuse to hold handwritten complaints drafted by employees to the same exacting standard we might apply to pleadings drafted by attorneys. Under the whistleblower statute, the City had thirty-one days to investigate the details of Ender's grievance about his transfer and resolve it internally without litigation. Because the City failed to render a final decision on Ender's grievance within thirty-one days, he was entitled to file his whistleblower action against the City. *See Domingues v. City of San Antonio,* 985 S.W.2d 505, 510 (Tex.App.—San Antonio 1998, pet. denied).

We hold that Ender satisfied the exhaustion requirement of the whistleblower statute. We overrule the City's contention to the contrary and affirm the district court's order denying the City's plea to the jurisdiction.