# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00681-CV

**Texas Board of Pardons and Paroles, Appellant**

**v.**

**Stuart Feinblatt, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT**
**NO. GN002722, HONORABLE CHARLES F. CAMPBELL JR., JUDGE PRESIDING**

The Texas Board of Pardons and Paroles (the Board) appeals the trial court=s denial of its plea to the jurisdiction.[1] Stuart Feinblatt, a hearings examiner employed by the Board, claims that after he reported allegedly illegal actions taken by the Board, he received a negative performance evaluation and disciplinary action. He filed a whistleblower cause of action against the Board alleging retaliatory adverse employment actions; he later amended his complaint to include a claim for retaliatory constructive discharge. *See* Tex. Gov=t Code Ann. '' 554.001-.010 (West 1994 & Supp. 2002). The Board filed a plea to the jurisdiction and a motion for summary judgment on the ground that Feinblatt=s claim did not effect a waiver of its immunity as provided for in the Act. *See id.* ' 554.0035 (West Supp. 2002). The Board contended that Feinblatt had failed timely to initiate administrative remedies as required by the whistleblower statute and that he did not make a good- faith report to an appropriate law enforcement agency. *See id.* '' 554.002, .006. The trial court denied the plea and the motion for summary judgment. We hold that (1) initiation of internal grievance procedures is a statutory prerequisite to suit and that Feinblatt timely initiated such procedures and (2) Feinblatt=s good-faith belief is an element of his cause of action and not a statutory prerequisite to suit. We therefore affirm the judgment of the trial court.

**BACKGROUND**

The statutory provisions relating to the Board are found in chapter 508 of the government code. *See* Tex. Gov=t Code Ann. '' 508.001-.324 (West 1998 & Supp. 2002). Board members

---

[1] Appellee Stuart Feinblatt was employed by the Board, which is part of the Department of Criminal Justice. For convenience, we will refer to the Board and the Department collectively as Athe Board.@

determine various matters in connection with parole and mandatory supervision. *Id.* '' 508.044, .045. The statute gives the Board the power to determine:

(1)  which inmates are to be released on parole or mandatory supervision;

(2)  conditions of parole or mandatory supervision, including special conditions;

(3)  the modification and withdrawal of conditions of parole or mandatory supervision;

(4)  which releasees may be released from supervision and reporting; and

(5)  the continuation, modification, and revocation of parole or mandatory supervision.

*Id.* ' 508.044(b) (West Supp. 2002).  The Board employs hearings examiners to conduct hearings and recommend the appropriate action to the Board. *See id.* '' 508.281, .2811.  It has implemented rules which govern this process.

Feinblatt was employed by the Board in various positions from February 1981 until January 2001.  Most recently, he held the position of hearings examiner with the Board for some seven years.  He claims that he consistently received good employee evaluations and was never disciplined until 1999.  Around that time, Feinblatt became concerned about actions by certain Board members which he perceived to be illegal.  In a January 25, 2000 letter to Travis County District Attorney Ronald Earle, Feinblatt complained of Agross violations of the law and due process@ in connection with five of the Board=s decisions concerning parole and mandatory supervision; he urged the D.A.=s office to initiate an investigation. Feinblatt contended that in each of the five cases, he as hearing officer had concluded that the evidence was insufficient to support a finding that the parolee had violated a condition of his parole, but that contrary to his

3

recommendations, the Board voted to revoke parole. Feinblatt alleged that the Board=s conduct violated

the constitutional standards required for parole hearings and the Board=s own rules.

Feinblatt had previously voiced his opinion regarding the illegality of the Board=s actions to

his supervisors, which provoked the Board to begin an investigation of Feinblatt in December 1999. The

investigation concluded that Feinblatt had made insubordinate and inappropriate comments in the presence

of parole officers and others. Following a hearing on January 6, 2000, the Board reprimanded Feinblatt for

insubordination. Feinblatt received twelve months= disciplinary probation and five days= suspension without

pay.[2] During his annual performance evaluation on May 23, Feinblatt=s supervisors gave him poor ratings,

specifically noting the Amany problems . . . with Mr. Feinblatt=s excessive and inappropriate hearing officer=s

comments, [his] comments off the record, procedural problems and inappropriate and unprofessional

comments regarding the hearing process.@ The evaluation also listed complaints and concerns with the way

Feinblatt conducted parole hearings and drafted his reports. On June 15, Feinblatt signed the evaluation

and indicated his protest of the ratings and his opinion that Athis evaluation can be nothing less than

retaliation for my exercising my right to speak about Board misconduct. I protest strongly and urge

revision.@ On July 11, Feinblatt submitted a grievance in which he complained that the evaluation was unfair

and requested a new evaluation; the Board did not receive the grievance until July 17. He also referenced

---

[2] As the result of a grievance meeting initiated by Feinblatt, the probation was reduced to eight
months and the suspension without pay was eliminated.

his belief that the evaluation was retaliatory in nature. On August 8, the Board rejected the grievance on the ground that it was not received within the fifteen-day time limit prescribed in its internal grievance procedure.

On September 13, 2000, Feinblatt filed this suit. In December, the Board investigated Feinblatt=s conduct as hearing officer at a parole hearing and concluded that Feinblatt had violated Board policy by Afail[ing] to remain neutral and impartial and fail[ing] to follow proper hearing procedures.@ On January 24, 2001, the Board recommended Feinblatt=s dismissal. Feinblatt resigned on January 30, claiming he had been constructively discharged. On February 1, Feinblatt received a letter from the Board dated January 29 advising him of his right to mediation. Feinblatt asserts that he was led to believe by Board employees that mediation ceased to be available to him because he was no longer an employee after he resigned. He attempted to submit a grievance on April 2, but it was again rejected as untimely. Feinblatt amended his whistleblower pleadings on May 29 to include constructive discharge as an additional adverse employment action.

*Standard of Review[3]*

**Subject-matter jurisdiction is essential to the authority of a court to decide a case.** *Texas Ass=n of Bus. v. Texas Air Control Bd.***, 852 S.W.2d 440, 443 (Tex. 1993). AA plea to the jurisdiction challenges the trial court=s authority to determine the subject matter of a specific cause of action.@** *Rylander v. Caldwell***, 23 S.W.3d 132, 135 (Tex. App.C Austin 2000, no pet.)**

---

[3] Our review is limited to the trial court=s denial of the Board=s plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code ⌐ 51.014(a)(8) (West Supp. 2002). Although a denial of a motion for summary judgment that is based on official immunity is an appealable interlocutory order, a denial of a motion asserting sovereign immunity is not. *See id.* ⌐ 51.014(a)(5).

(quoting *Texas State Employees Union/CWA Local 6184 v. Texas Workforce Comm=n*, 16 S.W.3d 61, 65 (Tex. App.CAustin 2000, no pet.)). In order to prevail, the party asserting the plea to the jurisdiction must show that even if all the allegations in the plaintiff=s pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff=s petition to confer jurisdiction on the trial court. *Id*.

We review the district court=s determination of subject-matter jurisdiction *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). In reviewing a trial court=s ruling on a plea to the jurisdiction, we do not look at the merits of the case. *Caldwell*, 23 S.W.3d at 135. Rather, we Aconstrue the pleadings in favor of the plaintiff,@ look to the pleader=s intent, and accept the pleadings= factual allegations as true. *Id.* AThe truth of the plaintiff=s allegations is at issue only if the defendant pleads and proves that the allegations were fraudulently made to confer jurisdiction on the court.@ *Id*. Further, Aa court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.@ *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). On judicial review of a plea to the jurisdiction based on sovereign immunity, our task is not to determine whether the plaintiff ultimately wins or loses; rather, our task is to decide whether the facts as alleged support jurisdiction in the trial court. *University of Tex. Med. Branch v. Hohman*, 6 S.W.3d 767, 771 (Tex. App.CHouston [1st Dist.] 1999, pet. dism=d w.o.j.).

*Exhaustion of Administrative Remedies*

**Section 554.006 of the Whistleblower Act requires that before filing suit, an employee must initiate internal grievance or appeal procedures. Tex. Gov=t Code Ann. ' 554.006;** *Hohman***, 6 S.W.3d at 774;** *see also Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan***, 51 S.W.3d 293, 294 (Tex. 2001) (stating that exhaustion of administrative remedies is a prerequisite to trial court=s jurisdiction in case involving disputed facts). The current version of the Act, which controls Feinblatt=s suit, states in part:**

> (a) A public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter.
>
> (b) The employee must invoke the applicable grievance or appeal procedures not later than the 90th day after the date on which the alleged violation of this chapter:
>   (1) occurred; or
>
>   (2) was discovered by the employee through reasonable diligence.

Tex. Gov=t Code Ann. **' 554.006(a), (b). It is undisputed that Feinblatt submitted a grievance to the Board within ninety days of his constructive discharge.[4] The Board asserts that because Feinblatt**

---

[4] As noted, Feinblatt amended his original petition to include a claim for retaliatory constructive discharge. The parties=s arguments regarding initiation of internal appeal procedures refer both to Feinblatt=s attempt to appeal his employee evaluation, which he received on May 23, 2000 and his constructive termination, which occurred January 31, 2001. We deem the constructive discharge as Athe alleged violation@ for purposes of this opinion. *See* **Tex. Gov=t Code Ann. ' 554.006(b) (West Supp. 2002);** *University of Tex. Med. Branch v. Hohman***, 6 S.W.3d 767, 773-74 (Tex. App.C Houston [1st Dist.] 1999, pet. dism=d w.o.j.) (holding that constructive discharge isAthe alleged violation@giving rise to the plaintiff=s cause of action, not the precipitating retaliatory acts).** Therefore, in this opinion we discuss Feinblatt=s compliance with section 554.006 in relation to his constructive discharge only. Nonetheless, we find that Feinblatt complied with section 554.006 regarding both the earlier performance evaluation and the constructive termination.

failed to submit his grievance within the fifteen-day period required by the Board=s grievance policy, Feinblatt failed to initiate grievance or appeal procedures as contemplated by section 554.006.

The Board argues that the requirement in subsection (a) that an employee Ainitiate action under the grievance or appeal procedures of the [employer]@ mandates that an employee comply with whatever time limit is imposed by the employer=s procedures, not the ninety-day time limit in section 554.006(b). The Board interprets the ninety-day limit as a Adefault@ provision applicable only when the employer=s internal grievance or appeal procedure has no specific provision, or as the statutorily imposed maximum should the employer afford more than ninety days. Feinblatt responds that the Board=s internal time limit may not trump the statutory provision, which controls in all instances. Because both of his grievances were submitted within ninety days of the relevant adverse employment action, he insists that he has fully complied with the statutory grievance requirement. For support, Feinblatt relies on *Hohman*=s holding that the ninety-day requirement in section 554.006(b) is the applicable time period within which an employee must initiate internal procedures. *See Hohman*, 6 S.W.3d at 774 (Athe employee must invoke the applicable grievance or appeal procedures not later than the ninetieth day after the date on which the alleged violation occurred@).

We agree with the *Hohman* decision that the ninety-day provision in the Act controls. The plain meaning of the statute does not support the Board=s contrary interpretation. The requirement that an employee initiate action under his employer=s grievance procedure is

8

found in subsection (a). That subsection is silent as to how long an employee has to initiate this action. Subsection (b) refers to a time limit and states that an employee Amust invoke the applicable . . . procedures not later than the 90th day after the date@of the adverse action. The Board=s position would both add language to subsection (a) and ignore the express language in subsection (b). Moreover, the Board=s reading would lead to absurd results. *See Employees Ret. Sys. v. Jones*, 58 S.W.3d 148, 153 (Tex. App.CAustin 2001, no pet.) (statutory interpretation that would produce absurd result is to be avoided). Under the Board=s interpretation, an employer could restrict an employee=s right to appeal a decision to one day and effectively shorten the ninety day period afforded by section 554.006.

Moreover, the Board=s position does not further the policy reflected by the initiation requirement. We have noted that Arequiring the exhaustion[5] of grievance and appeal processes as provided in the whistleblower statute encourages compliance through voluntary resolution, conference, conciliation and informal processes other than litigation.@*City of Austin v. Ender*, 30 S.W.3d 590, 594 (Tex. App.CAustin 2000, no pet.). Additionally, this Court has recognized several policies served by the exhaustion requirement:

---

[5] We note that some of the authorities on which we rely refer to the requirement imposed by section 554.006 as Aexhaustion@ of remedies. Prior to 1995, section 554.006 required an employee to exhaust an employer=s grievance or appeal procedures. *See* **Act of May 4, 1993, 73d Leg., R.S., ch. 268, ' 1, 1993 Tex. Gen. Laws 583, 610,** *amended by* **Act of May 25, 1995, 74th Leg., R.S., ch. 721, ' 6, 1995 Tex. Gen. Laws 3812, 3813.** The current version of section 554.006 requires that an employee timely *initiate* internal grievance or appeal procedures.

> [An] eminently practical reason for requiring exhaustion of remedies is that the complaining party may be successful in vindicating his rights in the administrative process and never have to resort to court. Notions of administrative autonomy require further that the agency be given first opportunity to discover and correct its own errors.

*Gregg County v. Farrar*, 933 S.W.2d 769, 775 (Tex. App.C Austin 1996, writ denied). As we have noted, the legislature intended that the governmental entity be afforded the opportunity to correct its own errors by resolving disputes before being subjected to the expense and effort of litigation. *Ender*, 30 S.W.3d at 594; *Gregg County*, 933 S.W.2d at 775. These purposes are served by a requirement that an employee initiate internal grievance or appeal procedures within ninety days of the adverse action because the employer is put on notice of an employee=s complaints before being subjected to suit, and both parties are afforded an opportunity to resolve the dispute internally. Requiring an employee to submit a grievance within the Board=s shorter time frame does not enhance these purposes.

Moreover, in the instant case, the Board was on notice of Feinblatt=s claims the day that Feinblatt resigned: AAs I have been constructively discharged in retaliation for whistleblowing, I must retire from agency service as of 1/31/2001.@ While not technically a grievance as defined by the Board=s policy, Feinblatt=s statement alerted the Board to his whistleblower complaints. Feinblatt also submitted his formal grievance on April 2, within ninety days of his resignation.

The Board next contends that Feinblatt failed to fully comply with its appeal or grievance procedure because he elected not to participate in the Board=s optional mediation

10

procedure.  The Board offers its employees an opportunity to mediate employment disputes; this procedure, however, is available only for a fee of $50, to be paid by the employee.  There is evidence in the record that mediation was not even available to Feinblatt once he resigned because he was no longer an employee.  Assuming that he was eligible to seek mediation, the fact that a governmental entity may offer its employees additional means by which to resolve disputes does not work to engraft those procedures on the initiation requirement in section 554.006.  *See City of Houston v. Cotton*, 31 S.W.3d 823, 825 (Tex. App.CHouston [1st Dist.] 2000, pet. denied).  In *Cotton*, the employee followed the procedure outlined in the city=s code for contesting a suspension.  *Id.* at 825.  The court rejected the city=s argument that the employee was also required to make a report of the retaliation to an investigative office of the city: AAs required by the Whistleblower Act, Cotton initiated an appeal within 90 days of being terminated . . . .  Once she was terminated, nothing in the Whistleblower Act required Cotton to report the retaliation to the [investigative office] in a separate procedure.@  *Id.*  Similarly, nothing in the Act required Feinblatt to participate in mediation at his own expense and the fact that the alternative resolution option was available could not foreclose his pursuing the statutory procedure.[6]  Having concluded that Feinblatt satisfied section 554.006, we overrule the Board=s second issue.

---

[6] The Board additionally asserts that mediation was the only administrative remedy available to Feinblatt because once he resigned, he was no longer an employee and thus not entitled to avail himself of the Board=s employee grievance procedure.  There is evidence in the record that contradicts the Board=s assertion.  The Board=s letter advising Feinblatt of his option to mediate the dispute states the following: AIf you elect not to participate in mediation, no response is necessary.  *You will still have the option of submitting a grievance should you[r] dismissal be eventually approved*.@  (Emphasis added.)  Had Feinblatt=s dismissal been approved (which it may have been had he not first resigned), he would have ceased to become an employee.  Yet the Board=s own letter states that he would have had the ability to

*Good-Faith Report*



submit a grievance regarding that decision. We therefore reject the Board=s alternative argument.

The Board also asserts that Feinblatt failed to invoke the Act=s waiver of immunity because he did not make a good-faith report of a violation of law and he did not in good faith make the report to someone the employeeAbelieves is authorized to (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law.@ Tex. Gov=t Code Ann. ' 554.002.[7] In a whistleblower action, a plaintiff=s good-faith report of illegal activity to an appropriate law enforcement authority is an element of the cause of action. *See Texas Dep=t of Criminal Justice v. Terrell*, 18 S.W.3d 272, 274 (Tex. App.CTyler 2000, pet. denied); *City of Fort Worth v. Zimlich*, 975 S.W.2d 399, 408 (Tex. App.CAustin 1998), *rev=d in part*, *remanded in part on other grounds*, 29 S.W.3d 62 (Tex. 2000). An element of a plaintiff=s cause of action does not affect the trial court=s subject-matter jurisdiction but rather the employee=s ability to ultimately prevail on the merits of the claim. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76-77 (Tex. 2000) (declining to treat statutory requirement in a wrongful death case as a jurisdictional bar and instead holding that the requirement affects a plaintiff=s Aright under the statute to go forward with this suit@).

The Board asserts that Feinblatt=s allegation that he made a good-faith report of the Board=s illegal actions is fraudulent or made in bad faith because Ano reasonable [parole] hearing officer could ever believe that the Board, given its statutory mandate as the sole and final decision-maker in parole revocation proceedings, does not have the authority to overrule one of its delegated hearing officers.@ Because

---

[7] For the purposes of the following discussion, we will refer to the good faith elements of section 554.002(a) and (b), *i.e.*, that the employee make a good-faith report of a violation of law and make the report to an authority that the employee in good faith believes is an appropriate law enforcement authority, as a single good faith requirement.

Feinblatt=s bad-faith allegations cannot confer jurisdiction on the trial court, the Board argues that this Court should reverse the trial court=s denial of its plea to the jurisdiction. *See Sullivan*, **51 S.W.3d at 294-95 (a party cannot by his own conduct confer jurisdiction where none otherwise exists). The Board=s argument is misplaced. The only relevant allegations at this stage are Feinblatt=s allegations regarding jurisdictional facts. As we have stated, whether Feinblatt acted in good faith affects the merits of his cause of action; it does not affect the trial court=s jurisdiction to hear the case.[8]**

Alternatively, the Board suggests that this Court should analogize the waiver of sovereign immunity in the Whistleblower Act to the limited waiver in the Texas Tort Claims Act. *Compare* Tex. Gov=t Code Ann. **'' 554.001-.010 (West 1994 & Supp. 2002),** *with* **Tex. Civ. Prac. & Rem. Code Ann. '' 101.001-.109 (West 1997 & Supp. 2002). A comparison of the relevant provisions, however, does not convince us to make this analogy. The Whistleblower Act contains a broad waiver of immunity expressed in expansive language: AA public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter.** *Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter*.@ **Tex. Gov=t Code Ann. ' 554.0035**

---

[8] At oral argument, the Board argued that while in most cases an employee=s good faith is a non-jurisdictional element of her cause of action, in this case, we can determine Feinblatt=s lack of good faith on a plea to the jurisdiction because *as a matter of law*, his belief in the Board=s illegal conduct is patently unreasonable. The Board=s argument might have been appropriate in its motion for summary judgment as it goes to the merits of Feinblatt=s claim; the only issue before this Court, however, is that of jurisdiction.

(West Supp. 2002) (emphasis added).  The waiver provision in the Tort Claims Act, however, is limited in scope:

> **A governmental unit in the state is liable for:**
>
> (1)  property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if
>
>> (A)  the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>>
>> (B)  the employee would be personally liable to the claimant according to Texas law; and
>
> (2)  personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. ' 101.021 (West 1997).

Moreover, the supreme court has specifically addressed the waiver provision in the Tort Claims Act and emphasized that it is limited in scope.  *See Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001).  The Act defines a narrow set of circumstances in which a governmental entity waives sovereign immunityC*i.e.*, for damages and personal injuries caused by motorized vehicles and equipment and for personal injuries caused by tangible personal propertyCand leaves intact the government=s immunity for all other claims.  Because of this limited scope, the supreme court concluded, a plaintiff cannot confer jurisdiction on the trial court by mere reference to the Tort Claims Act; rather, a plaintiff must plead specific facts that show that its case falls within the narrowly defined circumstances of section 101.021.  *Id.*  Under the

Tort Claims Act, certain facts that determine the success of a plaintiff=s claim on the meritsCfor example, whether the alleged harm was proximately caused by the use of tangible personal propertyCmay also determine the trial court=s ability to entertain the claim. *See id.* at 587-89. In contrast, the Whistleblower Act does not condition the waiver of immunity on the existence of the employee=s good faith. Therefore, an employee=s lack of good faith does not deprive the court of jurisdiction but merely affects the employee=s right to recover on the merits of the claim.

Furthermore, we note that the Tort Claims Act serves different purposes and is guided by different policy concerns than is the Whistleblower Act. The Tort Claims Act provides for a limited exception to the general rule that the government and its employees are immune from liability for their tortious acts. *City of Denton v. Van Page*, 701 S.W.2d 831, 834 (Tex. 1986). By enacting the Tort Claims Act, the legislature intended to make a governmental entity liable only to the extent that a private person would be liable under existing law. *See State Dep=t of Highways & Pub. Transp. v. Dopyera*, 834 S.W.2d 50, 54 (Tex. 1992). The Act does not create new duties on the part of governmental entities. *Van Page*, 701 S.W.2d at 834.

The whistleblower statute has a twofold purpose: (1) protecting public employees from retaliation by their employer when, in good faith, an employee reports a violation of law, and (2) securing lawful conduct on the part of those who direct and conduct the affairs of public bodies. *Ender*, 30 S.W.3d at 594. It is reasonable to expect that the legislature intended a broad waiver of immunity for whistleblower claims to accomplish these important policies. For all of these reasons, we decline to analogize the broad grant of immunity in the Whistleblower Act to the limited waiver in the Tort Claims Act. Accordingly, we overrule the Board=s first issue.

## CONCLUSION

**We hold that while section 554.006 is a statutory prerequisite to suit, Feinblatt complied with its requirement to initiate internal grievance or appeal procedures within ninety days. We also hold that section 554.002, which conditions an employee=s right to recovery on his good-faith belief and actions, is an element of a whistleblower cause of action that goes to an employee=s ultimate recovery on the merits and is not a jurisdictional prerequisite to suit. Therefore, we affirm the trial court=s denial of the Board=s plea to the jurisdiction.**

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: May 2, 2002

Publish