**Opinion issued May 30, 2013**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

## NO. 01-11-00508-CV

_____

**KERYL L. DOUGLAS, Appellant**

**V.**

**HOUSTON HOUSING AUTHORITY AND ERNIE ETUK, Appellees**

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-27821**

---

## MEMORANDUM OPINION

Keryl Douglas appeals the trial court's dismissal with prejudice of her Texas

Whistleblower Act claim and grant of appellee Houston Housing Authority's and

appellee Ernie Etuk's plea to the jurisdiction. We affirm the trial court's judgment.

## Background

In October 2009, Douglas was promoted to the position of Director of Houston Housing Resource, Inc., a 501(c)(3) nonprofit support organization both created and wholly controlled by the Houston Housing Authority ("HHA"). Documents attached to HHA's plea demonstrate that Douglas and her direct supervisor had several contentious interactions in late January 2010, including a January 27 meeting when, according to her direct supervisor, Douglas "burst" into his office and accused him of trying to "steal her ideas." Emails from this time period also evidence a degree of enmity.

On January 28, 2010, Douglas emailed a letter to the United States Department of Housing and Urban Development ("HUD") alleging numerous instances of organizational wrongdoing.[1] Douglas also emailed HHA's former Human Resources Director and other HHA executives, accusing her direct supervisor of creating a hostile work environment and discriminating against her based on her race. HHA initiated an investigation into Douglas's racial discrimination claim and the supervisor-subordinate relationship between Douglas and her direct supervisor. On January 30, 2010, HHA placed Douglas on leave with pay pending completion of the investigation.

---

[1] Douglas's January 28, 2010 letter to HUD was not submitted to the trial court and is not included in the appellate record.

2

Upon completion of the investigation on February 2, 2010, HHA decided to terminate Douglas's employment for her demonstrated unwillingness to accept her direct supervisor's authority and direction. In addition to the letter from HHA informing her of the decision, Douglas claims to have also received a phone call from the HR Director informing her that her employment with HHA had been terminated. According to Douglas, when she expressed her desire to appeal her termination with assistance of counsel during that phone call, the HR Director told her that "there was no appeal for her termination; her termination was final." HHA disputes Douglas's allegations with respect to this alleged conversation.

In a March 25, 2010 demand letter to HHA, Douglas's counsel argued, *inter alia*, that her termination was in retaliation for having written to HUD with her whistleblower claims. Although the letter stated that it was to be considered "an effort to try to resolve [Douglas's] claims against HHA before [she moved] forward with [her] next steps for obtaining relief through the judicial process," it neither invoked nor referenced HHA's grievance process. Following her unsuccessful settlement attempts, Douglas filed suit on May 3, 2010 against HHA and HHA's former President and CEO, Ernest Etuk.

Douglas alleges in her amended petition that HHA (1) violated the Texas Whistleblower Act when it terminated her employment because she reported HHA's wrongdoing to HUD, (2) discriminated against her on the basis of her

3

gender in violation of section 21.051 of the Labor Code, (3) discriminated against her on the basis of her race, also in violation of section 21.051 of the Labor Code, (4) retaliated against her after she complained of race discrimination in violation of section 21.055 of the Labor Code, (5) negligently maintained a superior's employment, and (6) intentionally inflicted her with emotional distress. Douglas further alleges that Ernest Etuk (1) sexually harassed her and (2) intentionally subjected her to infliction of emotional distress. HHA and Etuk filed a combined plea to the jurisdiction/motion to dismiss arguing that all eight of the claims should be dismissed for lack of subject-matter jurisdiction.

The hearing on the motion was April 25th,[2] and the trial court's May 11th order granted the plea to the jurisdiction/motion to dismiss and dismissed all claims with prejudice. Specifically, the trial court held that it was without subject-matter jurisdiction to hear the Whistleblower Act claim because Douglas had not pursued HHA's grievance or appeal procedures prior to suit as required by the mandatory and jurisdictional requirements of sections 311.034 and 554.006(a) of the Texas Government Code. The trial court also expressly found that it did not have subject-matter jurisdiction over the remainder of Douglas's claims for the variety of reasons set forth in its order, which further states that "all claims asserted by [Douglas] in her Amended Petition against [appellees] are dismissed in their

_____

[2] The reporter's record filed in this case includes no transcript of the hearing.

4

entirety, with prejudice" and includes a Mother Hubbard clause stating that all relief not expressly granted in the order is denied and that the order is a "final judgment."

## Standard of Review

Appellees' plea to the jurisdiction seeks dismissal of Douglas's claim for lack of subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Univ. of Hous. v. Barth*, 178 S.W.3d 157, 160–61 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Subject-matter jurisdiction is a question of law that we review de novo. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002); *Kamel v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 333 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2010, pet. denied), the existence of which is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993); *Barth*, 178 S.W.3d at 161. When a plea to the jurisdiction challenges the existence of jurisdictional facts, we apply a standard of review that mirrors the standard applicable to traditional summary judgments. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004); *see also* TEX. R. CIV. P. 166a(c). Thus, appellees bore the initial burden of establishing that one or more facts necessary to jurisdiction does not exist. *See Miranda*, 133 S.W.3d at 228 (observing that this standard protects claimant from having to put on her case simply to establish

5

jurisdiction); *Porretto v. Patterson*, 251 S.W.3d 701, 711 (Tex. App.—Houston [1st Dist.] 2007, no pet.). If appellees satisfied their initial burden, the burden shifted to Douglas to put on evidence raising a fact issue as to jurisdiction. *Miranda*, 133 S.W.3d at 228; *Patterson*, 251 S.W.3d at 711. In determining whether these burdens have been met, we review the evidence in the light most favorable to Douglas, indulging every reasonable inference in her favor and resolving any doubts in her favor. *Miranda*, 133 S.W.3d at 228.

### HHA's Plea to the Jurisdiction

Appellees argue that the trial court lacks jurisdiction over Douglas's Whistleblower Act claim because she failed to properly initiate HHA's grievance procedures before filing suit. Douglas counters that HHA's ambiguous grievance policy does not apply to discharged employees. She also argues that despite the ambiguity, she nevertheless attempted to timely grieve her termination but her initial efforts to do so were thwarted by the HR Director. Douglas also contends that her verbal communications with HHA's HR Director in February 2010 and her counsel's March 25, 2010 letter were sufficient to invoke the grievance process.

### A.    The Whistleblower Act's grievance-initiation requirement

The Whistleblower Act, which is designed to enhance openness in government and to compel the government's compliance with law by protecting those who inform authorities of wrongdoing, prevents state or local governmental

6

entities from suspending, terminating, or taking an adverse personnel action against a public employee who in good faith reports a violation of law by the governmental entity to an appropriate law enforcement authority. TEX. GOV'T CODE ANN. § 554.002(a) (West 2012); *City of Hous. v. Levingston*, 221 S.W.3d 204, 218 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Davis v. Ector Cnty.*, 40 F.3d 777, 785 (5th Cir. 1994)). As a prerequisite to filing suit under the Whistleblower Act, a claimant must first "initiate action under the grievance or appeal procedures" of her governmental employer. TEX. GOV'T CODE ANN. § 554.006(a) (West 2012). There is, however, no requirement that a claimant exhaust her administrative remedies before filing suit; rather, one is required only to initiate the grievance or appeal and allow the grievance authority sixty days in which to render a decision. *See Fort Bend Indep. Sch. Dist. v. Gayle*, 371 S.W.3d 391, 394–95 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (citing *Univ. of Tex. Med. Branch v. Barrett*, 159 S.W.3d 631, 632 (Tex. 2005)); *see also W. Hous. Charter Sch. Alliance v. Pickering*, No. 01–10–00289–CV, 2011 WL 3612288, at *8 (Tex. App.—Houston [1st Dist.] Aug. 18, 2011, no pet.).

The Whistleblower Act, however, does not dictate what actions are required to 'initiate' the appeals procedure. *Moore v. Univ. of Hous.-Clear Lake*, 165 S.W.3d 97, 102 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see City of Austin v. Ender*, 30 S.W.3d 590, 594 (Tex. App.—Austin 2000, no pet.). The

7

statute also does not require the use of particular words, nor require the employee to state that his grievance or appeal is based on the Whistleblower Act. *Moore*, 165 S.W.3d at 102; *Ender*, 30 S.W.3d at 594. What is required is that the employer be given reasonable notice, that is, fair notice that an employee intends to appeal a specific disciplinary decision and assert a Whistleblower Act claim. *Tarrant Cnty. v. McQuary*, 310 S.W.3d 170, 177 (Tex. App.—Fort Worth 2010, pet. denied) ("We hold that [employee] was required to give reasonable notice to [employer] that she was asserting a Whistleblower Act claim."); *see also Med. Arts Hosp. v. Robison*, 216 S.W.3d 38, 44 (Tex. App.—Eastland 2006, no pet.) (holding trial court erred in denying plea to jurisdiction because employee failed to give employer notice of Whistleblower Act claim prior to filing suit).

As a jurisdictional prerequisite, compliance with the grievance-initiation requirement is essential to the trial court's jurisdiction over a whistleblower action. *Barth*, 178 S.W.3d at 161–62. When a plaintiff has not satisfied this requirement, her lawsuit is barred by governmental immunity and must be dismissed. *See id.*

**B.  HHA's Grievance Policy and Douglas's Initiation of the Grievance Process**

Douglas argues that because HHA's policy is ambiguous as to discharged employees, it is inapplicable to her and that she was not required to initiate the grievance process. Even were the policy applicable to her, she contends, HHA's thwarting of her attempts to initiate a grievance relieves her of the obligation in

8

this case. She further contends that despite HHA's efforts, she nevertheless complied with section 554.006(a) by virtue of her counsel's March 25, 2010 letter to HHA's general counsel and her verbal communication with the HR Director. Citing to *University of Texas Medical Branch v. Hohman*, Douglas also argues that where a grievance or appeal procedure is unclear or otherwise ambiguous, jurisdictional questions should be resolved in favor of the nonmovant. 6 S.W.3d 767 (Tex. App.—Houston [1st Dist.] 1999, pet. dism'd w.o.j.).

### 1. Interpretation of HHA's Grievance Policy

Douglas argues that she was not required to initiate the grievance process because HHA's ambiguous policy does not apply to employees after they have been discharged or their employment has been terminated. Our analysis of this issue requires us to apply the standard rules of contract interpretation. *See Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994) (interpretation of a written document is a matter of law that is reviewed de novo); *see also Leyva v. Crystal City*, 357 S.W.3d 93, 101–02 (Tex. App.—San Antonio 2011, no pet.) (applying standard rules of contract interpretation to interpretation of grievance procedure); *Pickering*, 2011 WL 3612288, at *5 (same). In interpreting HHA's grievance procedure, our primary goal is to give effect to HHA's intent as expressed in the plain language, reading the grievance procedure within the context of the entire personnel manual and striving to give meaning to every provision and

to avoid rendering any provision meaningless. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). Thus, we begin by examining the policy's express language. *Id.* (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

We give the terms used their plain, ordinary and generally accepted meaning unless the writing shows the terms are intended to be used in a different sense. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158–59 (Tex. 2003). If we determine that the policy is subject to two or more reasonable interpretations, then we may hold it is ambiguous as a matter of law. *Italian Cowboy Partners*, 341 S.W.3d at 333; *Coker*, 650 S.W.2d at 392–95. An interpretation that renders a provision meaningless, however, is unreasonable. *Ace Ins. Co. v. Zurich Am. Ins. Co.*, 59 S.W.3d 424, 428–29 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (citing *Westwind Exploration, Inc. v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 382 (Tex. 1985)).

HHA's employee grievance policy is set out in its personnel manual, which recites that "[t]he purpose of the grievance procedure is to provide employees with an orderly process for the prompt and equitable resolution of complaints concerning wages, hours of work, or conditions of work." The manual sets forth a three-step grievance process in section XIII that is "intended to apply to most situations." The initial step of the process requires the grieving employee to

submit her grievance to her "immediate supervisor" or, if her grievance pertains to her immediate supervisor, to her next level supervisor. She must also "submit the grievance in writing on a form provided by the agency" within five days of the date she knew or should have known of the events providing the basis for her grievance.

Section XII of the personnel manual which is entitled, "Termination of Employment," states that employees are "at-will" and may be discharged "at any time for any reason that is not an illegal reason." Discharged employees are "entitled to receive payment for any accrued unused vacation leave, but will immediately lose all rights and benefits as an employee, except those rights specifically designated and reserved by operation of law or [HHA] policies and/or procedures." Section I, subsection (c) of the personnel manual states that all employees must go through an initial ninety-day evaluation period and that "[a]n employee who is dismissed during the initial evaluation period . . . shall have no right to grieve the dismissal, but must participate in an exit interview to process their benefits and receive a final paycheck." These are the only references in the manual to the rights of discharged employees.

Douglas argues that HHA's grievance policy only applies to current employees because the grievance procedure requires the grieving employee to submit her grievance to her "immediate supervisor" and discharged employees do not have an "immediate supervisor." She further argues that the lack of any

specific grievance procedures for discharged employees and the lack of any express language stating that the policy applies to discharged employees demonstrates that the policy only applies to current employees.

Douglas's interpretation of the policy, however, does not comport with the stated purpose of the grievance policy and Section I, subsection (c) of the personnel manual—to "provide employees with an orderly process for the prompt and equitable resolution of complaints concerning wages, hours of work, or *conditions of work*." (emphasis added). The termination of one's employment is a "condition of work." *See Sayre v. Mullins*, 681 S.W.2d 25, 28 (Tex. 1984); *see also Davis v. Dall. Cnty. Schs.*, 259 S.W.3d 280, 285 (Tex. App.—Dallas 2008, no pet.). Furthermore, if the policy does not apply to *any* discharged employees, as Douglas contends, then section I, subsection (c)'s language prohibiting probationary employees from grieving their dismissal is meaningless. *See Ace Ins.*, 59 S.W.3d at 428–29 (an interpretation that renders provision meaningless is unreasonable). Thus, the only reasonable interpretation of the policy is that it applies to discharged employees.

We conclude that HHA's grievance policy applies to discharged employees and, as such, Douglas was required to initiate a grievance as a prerequisite to filing suit under the Whistleblower Act.

## 2. Douglas's Obligation to Initiate a Grievance

Citing to *Fort Bend Independent School District v. Rivera*, 93 S.W.3d 315, 320 (Tex. App.—Houston [14th Dist.] 2002, no pet.), Douglas argues that because HHA's HR Director thwarted, and effectively denied, her attempts to appeal the termination of her employment, she is excused from the statutory requirement to initiate a grievance or appeal. *Rivera*, however, does not support such a proposition. On the contrary, *Rivera* stands for the proposition that when a governmental employer thwarts an employee's attempt to comply with the employer's grievance procedure, the employee is relieved of the obligation to *strictly comply with the procedure*. *See Rivera*, 93 S.W.3d at 320. In *Rivera*, the first level of the school district's grievance policy required employees to meet with their immediate supervisor. *Id.* After making repeated requests to her immediate supervisor for a meeting—all of which were ignored—Rivera delivered a written grievance to her level two hearing officer, as erroneously instructed by the school district. *Id.* The court held that although Rivera had not complied with the school district's grievance procedure, her actions were, nevertheless, sufficient to initiate a grievance in light of her supervisor's refusal to grant her a meeting. *Id.*

In doing so, the court explained that its holding fell within well-settled precedent that when a grievance procedure is unclear or ambiguous, an employee may invoke the procedure by utilizing alternative methods. *Id.*; *see also Hohman*,

13

6 S.W.3d at 775 ("When it is unclear whether the employer has a post-termination grievance procedure, or it is unclear what the procedure is, and the terminated employees timely notify the employer that they are invoking the grievance procedure, terminated employees have adequately implicated the grievance procedures.") (citing *Beiser v. Tomball Hosp. Auth.*, 902 S.W.2d 721, 724 (Tex. App.—Houston [1st Dist.] 1995, writ denied)); *see also Berry v. Bd. of Regents of Tex. S. Univ.*, 116 S.W.3d 323, 325 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("To the extent the steps in such a [grievance] procedure are unclear, as in this case, an employee's request to ranking officials of the employer to invoke the procedure (i.e., whatever it may be) can hardly be denied effect, but an employee is not relieved of the requirement to initiate a grievance."). Thus, even if the HR Director thwarted or otherwise denied Douglas's attempts to grieve the termination of her employment as Douglas alleges, Douglas was still required to initiate a grievance.

### 3. Douglas's Initiation of HHA's Grievance Procedures

Having determined that Douglas was required to grieve the termination of her employment before filing suit pursuant to the Whistleblower Act, we must now determine whether Douglas's actions were sufficient to invoke the grievance process as required by Government Code section 554.006(a).

14

Douglas contends that HHA's three-step grievance process is ambiguous with respect to discharged employees because it requires employees to submit their grievances to their "immediate supervisor" and a discharged employee has no "immediate supervisor." We agree that HHA's grievance policy does not contain grievance procedures specifically applicable to discharged employees and that the general grievance procedures set forth in the policy are ambiguous with respect to their application to discharged employees. As such, we must now determine whether Douglas gave HHA fair notice that she intended to appeal or grieve the termination of her employment and assert a Whistleblower Act claim. *McQuary*, 310 S.W.3d at 177 (holding employee required to give employer reasonable notice that she was asserting Whistleblower Act claim); *see also Robison*, 216 S.W.3d at 44 (citing *Montgomery Cnty. Hosp. Dist. v. Smith*, 181 S.W.3d 844, 850 (Tex. App.—Beaumont 2005, no pet.)) (stating grievance procedure's lack of clarity does not eliminate Whistleblower Act's notice requirement but rather factors into court's analysis of what notice is sufficient).

Douglas argues that, at a minimum, she put forth sufficient evidence to raise a fact question on this issue which precluded the granting of the plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 227–28 ("If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder.") The

15

evidence Douglas submitted to the trial court included a copy of her counsel's March 25th letter to HHA and an affidavit from Douglas that was attached to her response to HHA's plea to the jurisdiction.

Among other things, Douglas avers in her affidavit that she received a phone call from HHA's HR Director on February 1st or 2nd of 2010, informing her that her employment was being terminated for insubordination. According to Douglas, she "expressed disbelief and unfairness plus lack of warning, since the investigation was supposedly regarding [her racial] discrimination complaint" against her immediate supervisor, and she informed the HR Director that "[he] should be dismissed and not [her]." Douglas further states that she "expressed her disagreement with the decision, lack of warning, and conveyed [her] intent and interest to pursue reinstatement," and thus, "expressed/initiated grievance" within two days of her termination. Douglas's affidavit, however, never states that she mentioned her letter to HUD during that conversation, much less that she informed HHA's HR Director that she believed that she was being terminated because of her whistleblowing activities. Viewing the affidavit in the light most favorable to Douglas and indulging every inference in her favor, we cannot say that Douglas's affidavit demonstrates that she gave HHA reasonable notice that she was asserting a Whistleblower Act claim at that time. *See McQuary*, 310 S.W.3d at 177.

Douglas further argues that she complied with Government Code section 554.006(a) by virtue of her counsel's March 25, 2010 letter to HHA's general counsel. Although the letter specifically informs HHA's counsel that Douglas believes that her employment was terminated because of her whistleblowing activities (e.g., her January 28th letter to HUD), it does not indicate that Douglas wanted to avail herself of HHA's grievance procedure, appeal the termination of her employment, and seek reinstatement at that time. On the contrary, the letter reflects that Douglas wanted to settle her dispute with HHA so that she could "put this difficult episode in her life behind her and move forward to put her energy into other productive ventures." This is not enough to give HHA fair notice that Douglas intended to appeal the termination of her employment and assert a Whistleblower Act claim. *McQuary*, 310 S.W.3d at 177; *see also Smith*, 181 S.W.3d at 850 (stating that employee's email to employer that only asked employer to reconsider amount of severance pay, but did not express employee's desire to initiate employer's appeal and grievance process or ask employer to reconsider the termination of her employment, was insufficient for purposes of Whistleblower Act). At most, the letter suggests that Douglas was seeking a monetary settlement from HHA based upon her Whistleblower Act claim in late March 2010, not reinstatement.

Viewing the evidence in the light most favorable to Douglas and indulging every reasonable inference in her favor, we cannot say that Douglas's efforts were sufficient to give HHA fair notice that she intended to appeal or grieve the termination of her employment and assert a Whistleblower Act claim. Accordingly, we conclude that Douglas has failed to put on evidence raising a fact issue as to jurisdiction. *See Miranda*, 133 S.W.3d at 228; *Patterson*, 251 S.W.3d at 711.

## C. Douglas's Non-Whistleblower Act Claims

In addition to her Whistleblower Act claim, Douglas also asserted seven additional claims against HHA and Etuk in her amended petition. The trial court's order expressly found that it did not have jurisdiction over these seven other claims, and it dismissed them with prejudice, along with Douglas's Whistleblower Act claim. On appeal, Douglas does not challenge the trial court's dismissal of her other seven claims with prejudice. Accordingly, Douglas has failed to preserve error with regard to these claims. *See* TEX. R. APP. P. 38.1(i) (requiring brief to contain clear and concise argument for the contentions made with appropriate citations to authorities and record); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (discussing "long-standing rule" that issue may be waived due to inadequate briefing).

**Conclusion**

We affirm the judgment of the trial court.

Jim Sharp
Justice

Panel consists of Justices Higley, Sharp, and Huddle.