**MEDICAL ARTS HOSPITAL,**
Appellant,

v.

**Denee ROBISON, Appellee.**

No. 11–05–00320–CV.

Court of Appeals of Texas,
Eastland.

Dec. 14, 2006.

A. Craig Carter, Davis & Davis, P.C., Austin, for appellant.

Jason A. Burris, Hayes, Berry, White & McMurray, LLP, Philip Mack Furlow, Hayes, Berry, White & VanZant, L.L.P., Denton, for appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

1. TEX. GOV'T CODE ANN. § 554.001–.010 (Vernon 2004).

## OPINION

RICK STRANGE, Justice.

Denee Robison sued Dawson County Hospital District, Medical Arts Hospital, and several hospital employees alleging fraud, wrongful termination, and violation of the Texas Whistleblower Act.[1] Medical Arts filed a plea to the jurisdiction alleging that Robison did not initiate a grievance before filing suit and, therefore, that her whistleblower claim was jurisdictionally barred. The trial court denied the plea. We reverse and render.

### I. *Background Facts*

Robison worked as a registered nurse for Medical Arts. Medical Arts provides medical personnel for a local state prison unit and assigned Robison to it. Robison alleges that she observed illegal activities at the unit, reported them to the Texas Labor Board, and was terminated for doing so. Medical Arts denies that Robison was fired. The hospital contends that her position was eliminated and that she was offered other hospital jobs which she refused. If Robison was terminated, Medical Arts contends that it has a grievance procedure which required her to file a written grievance with her supervisor and that she failed to do so.[2]

Robison alleges that she was terminated on February 13, 2004. The parties agree that she met with the hospital's administrator, Charles Butts, on February 9 to discuss her position's elimination. Robison's husband, Justin, was also a registered nurse; and he too worked for Medical Arts. He planned to enroll in a master's program and had offered to resign and let Robison have his position. Robison and Butts discussed Justin's offer. Butts de-

2. Because this case is before us strictly on jurisdictional issues, whether any illegal activity took place is not in issue.

clined it and advised her that, if Justin left, they would have to post his position.

Robison asked Butts if her termination was personal, and he said that it was due entirely to budgetary reasons. Robison told Butts that she disagreed with his decision and that she would meet with the hospital board. She contends that Butts responded by saying that she would not score any points with him for doing so. She did place her name on the board's agenda but subsequently removed it on the advice of counsel. Her only other substantive contact with the hospital occurred when she contacted the hospital's HR director. Robison asked what she could do about the circumstances surrounding her position and was told there was nothing she could do because it was for budgetary and not disciplinary reasons.

Robison provided Butts with letters of recommendation on her behalf, but did not file a written grievance nor otherwise provide written notice of her intention to pursue a whistleblower claim. Instead, she filed suit on March 29, 2004. Medical Arts filed a plea to the jurisdiction challenging the trial court's jurisdiction over Robison's whistleblower claim. The trial court held a hearing and denied the plea.

## II. *Issues*

Medical Arts challenges the trial court's ruling with one issue, contending that Robison's whistleblower claim is jurisdictionally barred due to her failure to initiate a grievance.

---

3. Section 554.006(a).

4. *See Watley*, No. 11–04–00262–CV, 2006 WL 1451565, 216 S.W.3d 374 (initiating grievance is jurisdictional); *Univ. of Houston v. Barth*, 178 S.W.3d 157, 161 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (finding notice requirement to be jurisdictional); *City of Roman Forest v. Stockman*, 141 S.W.3d 805, 809–10 (Tex.App.-Beaumont 2004, no pet.)

## III. *Standard of Review*

Subject-matter jurisdiction is a question of law subject to de novo review. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002). We do not look to the merits of the case but consider only the pleadings and evidence relevant to the jurisdictional inquiry. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex.2004).

## IV. *Analysis*

The Whistleblower Act requires a claimant to timely initiate "grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing." [3] The statute provides the claimant with the discretion to exhaust any applicable grievance proceedings prior to filing suit or to terminate the proceedings and file suit after sixty days have elapsed. *See Midland Indep. Sch. Dist. v. Watley*, No. 11–04–00262–CV, 2006 WL 1451565, 216 S.W.3d 374 (Tex.App.-Eastland May 25, 2006, no pet.).

### A. *Is Filing a Grievance Jurisdictional?*

Intermediate courts of appeal have disagreed over whether filing a grievance is jurisdictional or simply a bar to recovery in light of recent supreme court decisions such as *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex.2000).[4] The Texas Su-

---

(treating statutory prerequisites as jurisdictional); *but see Tex. Dep't of Mental Health v. Olofsson*, 59 S.W.3d 831, 832–33 (Tex.App.-Austin 2001, pet. dism'd) (claim that suit was filed outside the time provided by the Whistleblower Act should be raised by summary judgment and not plea to the jurisdiction); *Castleberry Indep. Sch. Dist. v. Doe*, 35 S.W.3d 777, 782 (Tex.App.-Fort Worth 2001, pet. dism'd w.o.j.) (same); *Univ. of Houston v.*

preme Court recently declined to resolve this split. *See Univ. of Tex. Med. Branch at Galveston v. Barrett,* 159 S.W.3d 631, 632–33 (Tex.2005). The legislature, however, addressed this issue during the 2005 regular session. At the time of the *Barrett* decision, TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp.2006) provided:

In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language. In a statute, the use of "person," as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction.

Subsequent to *Barrett,* the legislature added the following sentence to the statute: "Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." [5]

■ Governmental entities have two types of immunity: immunity from suit and immunity from liability. *See City of New Braunfels v. Allen,* 132 S.W.3d 157, 164 (Tex.App.-Austin 2004, no pet.). We believe that the legislature intended to make clear that a governmental entity's immunity from suit for a whistleblower claim is conditioned upon timely filing a grievance. *See Montgomery County Hosp. Dist. v. Smith,* 181 S.W.3d 844, 853 (Tex.App.-Beaumont 2005, no pet.) (reading Section 311.034's amendment to compel the same conclusion).

There is no dispute that Robison did not file a written grievance or that she did not prior to filing of her suit bring her retaliation claim to the hospital's attention. Robison contends that the trial court still had jurisdiction because the hospital's policy was vague and unclear and she took action to initiate a grievance, because she orally put the hospital on notice of her grievance, and because she was told that there was nothing she could do to fight her termination and thus further action was unnecessary.

**B. *Does Medical Arts Have An Enforceable Grievance Policy?***

■ Robison relies upon cases such as *Fort Bend Independent School District v. Rivera,* 93 S.W.3d 315 (Tex.App.-Houston [14th Dist.] 2002, no pet.), for the proposition that, when an employer's grievance policy is unclear, strict compliance with it is unnecessary to preserve a whistleblower claim. The Fort Bend grievance policy required employees to first meet with their immediate supervisor. If this did not resolve the grievance, employees could initiate a level two grievance by providing a written grievance to their immediate supervisor. The plaintiff's grievance concerned her immediate supervisor. She attempted to meet with her supervisor, but the supervisor refused to schedule a meeting. The plaintiff's daughter contacted the school district to learn what step to take next and was incorrectly told to deliver a written grievance to the level two hearing officer rather than plaintiff's immediate supervisor. The plaintiff followed the district's instructions and delivered a written grievance to her level two hearing officer. The Houston Court held that, even though the plaintiff did not strictly comply with

---

*Elthon,* 9 S.W.3d 351 (Tex.App.-Houston [14th Dist.] 1999, pet. dism'd w.o.j.) (treating statutory time requirement for filing a grievance as non-jurisdictional).

**5.** *See* Act of May 25, 2005, 79th Leg., R.S., ch. 1150, 2005 Tex. Gen. Laws 3783.

the school district's grievance policy, her whistleblower claim was not barred because an employer cannot refuse to meet with an employee and then contend that the employee failed to follow the policy. *Id.* at 320.

To the extent the court reached this result by relying on estoppel, it is unclear whether *Rivera* is a correct statement of the law. *See Wilmer–Hutchins Indep. Sch. Dist. v. Sullivan,* 51 S.W.3d 293 (Tex.2001) (jurisdiction over suit for retaliatory discharge cannot be created by estoppel). We do, however, agree with the ultimate result. The Whistleblower Act requires employees to initiate a grievance and provide the governmental entity with at least sixty days to address it so that the employer has the opportunity to correct its own errors by resolving disputes before being subjected to the expense and effort of litigation. *Breaux v. City of Garland,* 205 F.3d 150, 163 (5th Cir.2000). Delivering the grievance to the level two hearing officer rather than plaintiff's immediate supervisor did not deprive the district of either notice or the opportunity to resolve plaintiff's claim before facing litigation.

The hospital's handbook is, unfortunately, not entirely clear on an employee's right to pursue a grievance if terminated. The handbook refers to terminations in section two, but this section does not include an appeal process. Medical Arts contends the handbook elsewhere contains a grievance process following termination and refers to the following provision:

**V.   *EMPLOYEE EMPLOYMENT INFORMATION:***

A.   ***Employee Problem Solving Procedure:*** Employees of Medical Arts Hospital should attempt to obtain answers to questions or solutions to work related problems from their supervisors or Department Managers. If employees are not satisfied with the response of their supervisors they may utilize the Medical Arts Hospital Employee Problem Solving Procedure. Unanswered questions or unresolved problems are not desirable in the work situation as they can lead to inefficiency, ineffectiveness and disruption of work. Reasons for an employee problem solving procedure problem may include, but are not limited to, a change in job status, demotion or termination. Appraisal results and attendant pay raise can not (sic) be addressed using the Problem Solving Procedure. The Employee Problem Solving Procedure gives the employees the opportunity to formally bring the situation forward for proper handling that is designed to provide satisfaction for the parties involved. It is important that problems be presented promptly, **IN WRITING.** This written submission should be made within three working days of the alleged situation so that the facts may be readily obtained and a decision reached. If the problem involves the employee's supervisor the employee may go to the next person in the chain of command to start the procedure's process. Time limits in the steps of the problem solving procedure are not intended to be a hinderance (sic) in an employee complaint situation. However, if employees presenting complaints do not appeal from one step to another within the specified number of working days, excluding Saturday, Sunday and holidays, the matter will be considered closed, unless the employees show unusual circumstances that prevented them from appealing within the time limit stated. The time limits given may be extended by mutual written consent of the employees involved and the Administrator. The steps in the Problem Solving Procedure are as follows:

1. *Step 1–Immediate Supervisor:* Employees and their immediate supervisor are encouraged to settle problems by and through prompt, thorough discussion. If this joint effort does not succeed, then the complaint should be submitted in writing by the employee to the immediate supervisor. The supervisor will respond, in writing within two working days. If the response is not acceptable to the employee, the written complaint may then [be] forwarded by the employee to the Department Manager within three working days.

The policy then provides for an appeal to the department manager, administrator, and governing board.

The employee handbook is not ideal, but it does contain a process by which an employee may grieve their termination. Robison did not strictly comply with that process by filing a written grievance. This alone, however, is insufficient to deprive the trial court of jurisdiction. The Whistleblower Act formerly required an employee to *exhaust* any administrative remedy. In 1995, it was amended to require only that an employee *initiate* a grievance. *Rivera*, 93 S.W.3d at 319. This change promotes a more liberal construction of the Act by focusing less on whether the employee has complied with all of the procedural requirements of any grievance process, and asking instead if the governmental entity received the required notice. *See Montgomery County Hosp. Dist.*, 181 S.W.3d at 850 (for purposes of the Whistleblower Act, grievance is timely if filed within 90 days—even though employer's policy imposed a five-day deadline, and notice is sufficient if the employer is given fair notice of the employee's desire to appeal and of the decision from which it appeals).

C. *Did Robison Provide The Required Notice?*

Robison relies upon the following decisions to support her argument that she complied with the Whistleblower Act's notice requirement because she discussed her termination with a supervisor and the hospital's HR director: *Rivera*, 93 S.W.3d 315; *Upton County v. Brown*, 960 S.W.2d 808 (Tex.App.-El Paso 1997, no pet.); and *Beiser v. Tomball Hosp. Auth.*, 902 S.W.2d 721 (Tex.App.-Houston [1st Dist.] 1995, writ denied). These decisions are distinguishable because in each the employer received actual notice that its employee believed that he or she had been fired in retaliation for reporting illegal activities.

In *Rivera*, the plaintiff filed a written grievance. 93 S.W.3d at 318. In *Upton County*, the plaintiff met with a county commissioner to appeal his termination. 960 S.W.2d at 812. In *Beiser*, the plaintiff's attorney sent a demand letter to the employer. 902 S.W.2d at 723. In these cases, the terminated employee specifically claimed that they had been terminated for reporting illegal activities, and the employer then had the opportunity to correct its mistake before facing litigation.

Robison contends that she met with her supervisors and hospital administrators to make her complaint known. But, she points to no evidence that at any time prior to filing suit did she notify the hospital that she believed her termination was the result of contacting the Texas Labor Board. She unquestionably informed the hospital that she disagreed with their decision to eliminate her position, and she provided an alternative method for satisfying the budget cut. However, Robison's communications would not have provided any reasonable employer with notice that a potential whistleblower claim existed.

We agree with Robison that the hospital's policy is unclear. Its location in the handbook, the absence of any reference to

a grievance procedure in the termination section, and the optional nature of the policy's language, all interfere with its comprehension in situations such as this. That, however, does not eliminate the Whistleblower Act's notice requirement. Instead, the policy's lack of clarity factors into the analysis of what notice is sufficient. *See Montgomery County Hosp. Dist.*, 181 S.W.3d at 854 (employee operating under somewhat ambiguous policies had several options for providing the employer notice of her potential whistleblower claim).

Because of this lack of clarity, we do not agree with the hospital that Robison was required to file a written grievance to preserve her rights to pursue a whistleblower claim.[6] Medical Arts was entitled to notice and sixty days to consider Robison's whistleblower claim. Under the facts of this case, Robison could have provided sufficient notice with a letter to her supervisor, hospital administrators, the board, or with a demand letter from her attorney. Alternatively, she could have raised her retaliation claim during her meeting with Butts. But, simply asking the hospital to reconsider her termination by making an alternative budgetary move is insufficient.

We also agree with Robison that the hospital's supervisory and administrative personnel did not help by telling her that there was nothing she could do because the decision was budgetary. This, however, is insufficient to create jurisdiction. The Texas Supreme Court has made clear that jurisdiction against a governmental

entity cannot be created by estoppel. *Wilmer–Hutchins Indep. Sch. Dist.*, 51 S.W.3d 293. Moreover, courts have consistently refused to recognize a futility exception to the Whistleblower Act's notice requirement. *See, e.g., Breaux*, 205 F.3d at 163.

Because Robison provided no notice of her whistleblower claim before filing suit, the trial court erred when it denied the plea to the jurisdiction. Medical Arts's issue is sustained.

## V. *Holding*

The trial court's order denying Medical Arts's plea to the jurisdiction is reversed, and judgment is rendered in Medical Arts's favor on Robison's whistleblower claim.

---

6. In *Johnson v. City of Dublin*, 46 S.W.3d 401, 405 (Tex.App.-Eastland 2001, pet. denied), we held that the failure to file a written grievance barred the plaintiff's whistleblower claim. In that case, the city's grievance policy was clear, but its application to the city's chief of police was in question. We held that plaintiff's claim that the city council and city manager were subjectively aware that he believed he was being terminated for reporting violations being committed by city employees did not excuse compliance with the city's grievance policy which required a written grievance. Our analysis in that case, and in this one, focused on the critical question: Did the governmental entity receive the statutorily required actual notice before being sued?