COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-09-306-CV

 

 

TARRANT COUNTY, TEXAS                                                 APPELLANT

 

                                                   V.

 

DEBORAH L. MCQUARY                                                          APPELLEE

 

                                              ------------

 

            FROM
THE 48TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. 
Introduction

In one
issue, Appellant Tarrant County, Texas, brings this interlocutory appeal,
asserting that the trial court erred by denying its plea to the jurisdiction. See
Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(8)
(Vernon 2008).  We reverse and render.

 

 








II. 
Background

Appellee
Deborah L. McQuary sued Tarrant County, alleging that it had terminated her
employment in violation of the Texas Whistleblower Act.  See Tex. Gov=t Code
Ann. '' 554.001B.010
(Vernon 2004).  In its plea to the jurisdiction, Tarrant County argued
that McQuary failed to satisfy government code section 554.006=s jurisdictional
prerequisites when she failed to provide any notice that she was alleging
retaliation for whistleblowing during the administrative appeal of her
termination.  The trial court denied
Tarrant County=s plea to the jurisdiction, and
this interlocutory appeal followed.

III.  Plea
to the Jurisdiction

A.  Standard of Review

A plea
to the jurisdiction is a dilatory plea used to defeat a cause of action without
regard to whether the claims asserted have merit.  Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 554 (Tex. 2000); City of Fort Worth v. Shilling, 266 S.W.3d
97, 101 (Tex. App.CFort Worth 2008, pet.
denied).  The plea challenges the trial
court=s
subject matter jurisdiction.  Bland,
34 S.W.3d at 554.  Whether the trial
court had subject matter jurisdiction is a question of law that we review de
novo.  Tex. Natural Res. Conservation
Comm=n v. IT‑Davy, 74
S.W.3d 849, 855 (Tex. 2002).








The
plaintiff has the burden of alleging facts that affirmatively establish the
trial court=s subject matter
jurisdiction.  Tex. Ass=n of
Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex.
1993); Shilling, 266 S.W.3d at 101. We construe the pleadings liberally
in favor of the plaintiff, look to the pleader=s
intent, and accept the pleadings= factual
allegations as true.  Tex. Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex.
2004).  If a plea to the jurisdiction
challenges the existence of jurisdictional facts, as in this case, we consider
relevant evidence submitted by the parties that is necessary to resolve the
jurisdictional issues.  Id. at
227; Bland, 34 S.W.3d at 555.  The
pleadings relevant to a review of a plea to the jurisdiction include amended
petitions, the plea to the jurisdiction, and responses filed in connection with
a defendant=s plea to the jurisdiction.  City of Austin v. Ender, 30 S.W.3d
590, 593 (Tex. App.CAustin 2000, no pet.).








A trial
court=s review
of a plea to the jurisdiction challenging the existence of jurisdictional facts
mirrors that of a traditional motion for summary judgment. Miranda, 133
S.W.3d at 228; Shilling, 266 S.W.3d at 101; see also Tex. R. Civ.
P. 166a(c).  The governmental unit is
required to meet the summary judgment standard of proof for its assertion that
the trial court lacks jurisdiction. Shilling, 266 S.W.3d at 101 (citing
Miranda, 133 S.W.3d at 228).  The
plaintiff is then required to show that there is a disputed material fact
regarding the jurisdictional issue.  Id.  If the evidence creates a fact question
regarding jurisdiction, the trial court must deny the plea to the jurisdiction
and leave its resolution to the fact finder. 
Id.  But if the evidence is
undisputed or fails to raise a fact question on the jurisdictional issue, the
trial court rules on the plea to the jurisdiction as a matter of law.  Id.

B.  Statutory Scheme

The Whistleblower
Act has a twofold purpose:  (1)
protecting a public employee from retaliation by her employer when, in good
faith, the employee reports a violation of law, and (2) securing lawful conduct
on the part of those who direct and conduct the affairs of public bodies.  Ender, 30 S.W.3d at 594; see also Tex.
Gov=t Code
Ann. ' 554.002(a)
(AA state
or local governmental entity may not suspend or terminate the employment of, or
take other adverse personnel action against, a public employee who in good
faith reports a violation of law by the employing governmental entity or
another public employee to an appropriate law enforcement authority.@).








The
applicable portion of the government code states, AA public
employee must initiate action under the grievance or appeal
procedures of the employing state or local governmental entity relating to
suspension or termination of employment or adverse personnel action before
suing under this chapter.@ 
Tex. Gov=t Code Ann. '
554.006(a) (emphasis added).  ASection
554.006 does not require that grievance or appeal procedures be exhausted
before suit can be filed; rather, it requires that such procedures be timely
initiated and that the grievance or appeal authority have 60 days in which to
render a final decision.@ 
Univ. of Tex. Med. Branch at Galveston v. Barrett, 159
S.W.3d 631, 632 (Tex. 2005); see also Shilling, 266 S.W.3d at 102 (AThe
requirement that an employee >initiate=
grievance procedures before filing suit is to afford the employer an
opportunity to correct its errors by resolving disputes before litigation.@).  Compare Aguilar v. Socorro Indep. Sch.
Dist., 296 S.W.3d 785, 789 (Tex. App.CEl Paso
2009, no pet.) (stating that, in light of section 554.006(d), the change in
statutory language from Aexhaust@ to Ainitiate@ in
section 554.006(a) has no effect on the implementation of the statute), with
Med. Arts Hosp. v. Robison, 216 S.W.3d 38, 43B44 (Tex.
App.CEastland
2006, no pet.) (stating that the change from Aexhaust@ to Ainitiate@
promotes a more liberal construction of the act by focusing less on whether the
employee has complied with all of the procedural requirements of a grievance
and asking instead if the governmental entity received the required notice).








As
presented both in briefing and oral argument before this court, the questions
in this appeal are:  (1) Was McQuary
required, in initiating action under the grievance procedure, to put Tarrant
County on notice that she was asserting a Whistleblower Act claim?  (2) If she was so required, did she give such
notice?  (3) And if she was so required
and no such notice was given, was she wrongfully prevented from providing such
notice?  

We
answer the first question in the affirmative, holding that, as a prerequisite
to bringing a Whistleblower Act claim, a government employee must provide
reasonable notice that she is making a Whistleblower Act claim in the
initiation of the grievance or appeal procedures related to the suspension or
termination of employment or adverse personnel action.  We answer the second two questions in the
negative.  

C.  Matters Considered

In
December 2005, the Tarrant County Sheriff=s Office
hired McQuary, a registered nurse, as its first AJail
Medical Liaison.@ 
Executive Chief Deputy Bob Knowles was McQuary=s direct
supervisor.  In June 2006, at the end of
McQuary=s
180-day probationary period, Sheriff Dee Anderson terminated McQuary=s
employment.

McQuary
filed suit against Tarrant County, alleging that she had been terminated in
retaliation for reporting violations of law. 
Specifically, McQuary claimed:








Within one week of employment, [she] began being
subjected to a hostile environment anytime she expressed or voiced any concerns
regarding patient rights, health concerns regarding the inmates, or the failure
to follow state or federal law.  On or
about December 29, 2005, [she] approached her supervisor regarding [a] letter
she wanted to send to the Sheriff.  The
letters were a summary of her visits with staff regarding policy and procedures
for the medical records (including HIPPA violations) and recommended training
for staff regarding same.  On December
30, 2005, [she] again spoke with her supervisor about corresponding with [the]
Sheriff about other legal violations regarding TB testing and reading and the
Standing Order and Protocols for treating inmates.  Her supervisor=s response was to tell
her she was Amaking Dr. Byrd mad@ and deny her access to
JPS Policies and Procedures and her own job description.  He also stated, AWe must be careful what
we write and how we write it and what goes to the Sheriff.@  These actions began a pattern of [McQuary]
disclosing problem areas and violations of law, as well as recommendations for
resolutions, only to be . . . treated poorly by Dr. Byrd and ordered by her
supervisor to ignore legal violations and problem areas.   

 

In good faith, [she] reported violations of
federal and state law by JPS and the Sheriff=s Office regarding medical treatment, services
and practices to Executive Chief Deputy Sheriff Bob Knowles. . . .  In good faith, [she] believed that Deputy
Knowles, as a member of the Sheriff=s Office, had the authority to regulate under or
enforce the laws alleged to have been violated, or to investigate or prosecute
a violation of criminal law. [She] was led to believe that her concerns
regarding illegal activities were being forwarded to the Sheriff.  [Her] supervisor was deliberately indifferent
to [her] disclosures of these legal violations and made a conscious choice not
to act or investigate the violations, and prevented [her] from taking any
actions on her own to resolve the violations of law, or [to] inform and seek
assistance [from] anyone else.  With
regard to [her] disclosure about the inadequacy of the TB testing of the JPS
staff itself, his response was he Ahoped they all died from TB.@

 

Because of [her] good faith disclosures and
reports of violations of laws, she was threatened, harassed, and ultimately
fired . . . .

 








Tarrant
County filed a plea to the jurisdiction, attaching to it Sheriff Anderson=s
affidavit; a copy of the notice of termination from Sheriff Anderson to
McQuary, dated June 9, 2006, which set out her termination date as June 16,
2006, and informed her that rule 8.08 of the Sheriff=s
Department Civil Service Rules allowed her five working days to appeal to the
sheriff; a copy of rule 8.08 of the Sheriff=s
Department Civil Service Rules;[1]
a copy of McQuary=s June 12, 2006 letter to
Sheriff Anderson; a copy of an undated letter from McQuary to Sheriff Anderson;
and a copy of a letter dated June 16, 2006, from Sheriff Anderson to McQuary,
stating that the termination would stand and that she had exhausted her
administrative appeals process.  In its
plea to the jurisdiction, Tarrant County argued that McQuary never mentioned
anything related to whistleblowing activities, reports of misconduct, or
opposition to anything illegal or allegedly illegal when appealing her
termination to the sheriff.








In
Sheriff Anderson=s affidavit, he discussed
McQuary=s
termination and the subsequent correspondence between himself and McQuary
attached to the affidavit and the plea to the jurisdiction.  In her June 12, 2006 letter, McQuary stated
the following:

I am aware newly hired employees of the Tarrant County Sheriff=s Office serve a
probationary period of one hundred and eighty (180) days.  Chapter 8 of the Tarrant County Sheriff=s Department Civil
Service Rules regarding probation 8.06 reads: 
EVALUATION OF PROBATIONARY PERIOD. 
The probationer shall be evaluated at least twice during the
probationary period by their immediate supervisor.  One evaluation must be at the midpoint of the
probationary period and a second evaluation must be not less than (10) days
prior to the end of the probationary period.

 

As of this day, June 12, 2006, I have not received any evaluations;
written or oral.  Pursuant to Chapter 8
of the Tarrant County Sheriff=s Department Civil Service Rules my first
evaluation should have been March 20, 2006 and the second evaluation should
have been somewhere between June 9-19, 2006. 
My first day of employment is December 21, 2005.  I received the termination of probationary employment
on June 9, 2006.  On January 25, 2006,
Chief Knowles told me to disregard my job description.  Within the next few days, I discussed this
with Chief Key and he advised me to keep a record. 

 

The information included proves the non-compliance with Tarrant County
Sheriff=s Department Civil
Service Rules.

 

In the second, undated letter to Sheriff Anderson, McQuary stated:

 








It appears the probationary
period was completed successfully and there is no documentation that exists
showing otherwise.  Medical liaison for
the entire Sheriff=s Department rather than just
jail liaison will broaden the scope and duties of the position.  I am happy to work with Chief Knowles and
have no hard feelings.  Considering the
recent progression, I request to continue employment with [the] Tarrant County
Sheriff=s
Department as the medical liaison with your immediate supervision.  With this arrangement, I will receive
direction and communication and a revised job description.

With
regard to McQuary=s letters, Sheriff Anderson
stated in his affidavit that he 

understood the two documents to comprise a request for continued
employment, but nothing in the documents suggested that she felt that she was
being retaliated against on any basis whatsoever. Neither document made any
reference to any reports of any law violations or reports of misconduct which
she was claiming to have made prior to [his] issuance of the June 9, 2006
letter stating [his] intention to terminate her employment.  She said nothing to [him] which gave [him]
any reason to suspect that she was or had been claiming to be a whistleblower
and [he] was not aware of her making claims of this nature to anyone else.

 

He also stated that at the end of McQuary=s probationary period, 

 

[he] concluded, based upon [his] personal observations and reports
from other people who worked with her or observed her work in the jail, that []
McQuary was not the right fit for the new position and [he] made the decision
to terminate her employment at the end of that probationary period.

 

In her affidavit attached to her response to
Tarrant County=s plea to the
jurisdiction, McQuary included the information stated in her pleadings and
added:

 








During my Aappeal hearing@ with Sheriff Dee
Anderson, I attempted to explain in detail to the Sheriff the problems and
issues I was having during my employment. 
Sheriff Anderson refused to listen to any such statements and just
walked out and said he Awould look into it@ and that he was Alate for a meeting.@  Also at this Ahearing@ I attempted to give
Sheriff Anderson notes that detailed issues with law violation at the jail in
the past.  I advised Sheriff Anderson
that AI had no hard feelings
toward Chief Knowles and that I was still willing to work with him.@  However, I did not wish to work directly
under Chief Knowles and would prefer to be directly under Sheriff
Anderson.  Any time I tried to explain
the particulars of my termination, including the retaliation for reports of law
violations, I was immediately cut-off by Sheriff Anderson and told that he had
to be somewhere else.  My Aappeal hearing@ lasted approximately one
minute; therefore I was not allowed to detail any of my complaints, including
whistleblower complaints and retaliation complaints, at that time.  I was purposefully prevented from voicing
these issues and complaints by Sheriff Dee Anderson and other members of the
Sheriff=s Department, in an
effort to thwart my legal rights. 

 

After
taking the matter under consideration, the trial court denied Tarrant County=s plea to
the jurisdiction, setting out the following reasons in a letter to the parties:

The County stated in its presentation that the
Civil Service Rules which govern appeals to the Sheriff do not require that the
employee make a written appeal.  I
agree.  An employee may make an oral
appeal or supplement a written appeal orally.

 

The written notice of appeal does not use the
words retaliation, whistleblower[,] or state [McQuary] was fired
because she complained about illegal or inappropriate activities.  However, [McQuary=s] written notice does
allege that Chief Knowles told her to disregard her job description and that Chief
Key, upon being told of this action by Chief Knowles, advised her to keep a
record.  The reason Chief Knowles
allegedly told her to disregard her job description and Chief Key allegedly
advised her to keep a record is not stated in the written notice of
appeal.  [] McQuary claims that she was
going to orally supplement the notice when she had her appellate hearing with
the Sheriff.

 








After [] McQuary filed her notice of appeal, she
met with the Sheriff for the purpose of presenting her appeal of her
termination. Based on the affidavits of Sheriff Anderson and [] McQuary, there
is a factual dispute as to whether [] McQuary tried to inform the Sheriff of
her alleged Whistleblower activities and the alleged retaliation. [] McQuary
states in her affidavit that any attempt to discuss these topics was rebuffed
and that the appeal hearing lasted less than a minute.

 

The clear tenor of the Sheriff=s affidavit denies any
such attempt when he states that AShe said nothing to me which gave me any reason
to suspect that she was or had been claiming to be a Whistleblower, and I was
not aware of her making claims of this nature to anyone else.@

 

I am of
the opinion that the written allegations concerning Chief Knowles and Chief
Key, plus the affidavits of [] McQuary and Sheriff Anderson, raise a fact issue
as to whether or not [] McQuary was prevented from exhausting her
administrative remedies.

D.  Analysis

1.  Notice Requirement

We hold
that McQuary was required to give reasonable notice to Tarrant County that she
was asserting a Whistleblower Act claim. 
See Robison, 216 S.W.3d at 43; Montgomery County Hosp. v.
Smith, 181 S.W.3d 844, 850 (Tex. App.CBeaumont
2005, no pet.). 













ANotice@ means Afair
notice@Cthat is,
notice of the employee=s intent to appeal a
disciplinary decision and notice of which decision or decisions the employee
intends to appeal.  Smith, 181
S.W.3d at 850 (holding that, in the absence of a statutory standard or a
standard created by an employee manual detailing the required contents of a
public employee=s notice of appeal, an employee
must give fair notice of her decision to appeal and of the decision appealed
from).  In Smith, the employee
alleged in her pleadings that she had been fired for reporting to a board
member that the hospital district=s CEO
entered into a contract to sell a building owned by the hospital district.  Id. at 845B46. The
hospital district argued that her termination was based on her poor job
performance and conduct unrelated to her retaliation claim.  Id. at 846. After her termination,
Smith sent the CEO an email requesting that he reconsider the amount of
severance offered in exchange for a release of her claims.[2]  Id. 
But she contended on appeal that the email constituted an appeal of the
decision to terminate her employment.  Id.  Upon reviewing the email, the court concluded
that Smith failed to initiate the appeal process required for a Whistleblower
Act claim because Ano reasonably prudent employer
could have been subjectively aware that Smith, by virtue of [her] e-mail,
desired to invoke the [hospital district=s]
disciplinary appeal process with respect to her termination.@  Id. at 850; cf. Gregg County v.
Farrar, 933 S.W.2d 769, 773B74 (Tex.
App.CAustin
1996, writ denied) (holding that Farrar sufficiently presented notice of his
Whistleblower Act claim during his grievance committee hearing).[3]








Simply
asking the employer to reconsider termination by making alternative suggestions
is insufficient to provide notice.  See
Robison, 216 S.W.3d at 44.  In Robison,
a nurse at a local state prison unit failed to give any written notice of her
intent to pursue a Whistleblower Act claim and failed to point to any evidence
that she, at any time prior to filing suit, otherwise notified her employer
that she believed her termination was in retaliation for reporting illegal
activities at the unit to the Texas Labor Board.  Id. at 39, 43.  That is, 

[s]he unquestionably informed the hospital that she disagreed with
their decision to eliminate her position, and she provided an alternative
method for satisfying the budget cut [to which her employer had attributed her
termination].  However, Robison=s communications would
not have provided any reasonable employer with notice that a potential
whistleblower claim existed. 

 

Id. at 43.

The
legislature intended that the governmental entityCin this
case, Tarrant CountyCbe given an opportunity to
correct its mistakes by resolving claims before the expense and effort of
litigation ensue.  See Shilling,
266 S.W.3d at 102; Farrar, 933 S.W.2d at 775.  But to be able to do this, the governmental
entity must be given reasonable notice that it has, in fact, made a mistake
that can be resolved before a lawsuit is filed. 
See Robison, 216 S.W.3d at 43B44; Smith,
181 S.W.3d at 850.  This goes
hand-in-glove with the reasoning behind the exhaustion previously required
under government code section 554.006(a): 









An eminently practical reason
for requiring exhaustion of remedies is that the complaining party may be
successful in vindicating his rights in the administrative process and never
have to resort to court.  Notions of
administrative autonomy require further that the agency be given first
opportunity to discover and correct its own errors.

Ender, 30
S.W.3d at 594 (holding that employee satisfied statutory exhaustion requirement
based on the description in his handwritten grievance, the relief he requested,
and his Anumerous
reports [to various supervisors inside and outside his department] of the
illegality@ being applied to him, even
though his grievance did not include the words Aretaliation@ or Adiscrimination@); see
also Robison, 216 S.W.3d at 43 (distinguishing Fort Bend Indep. Sch.
Dist. v. Rivera, 93 S.W.3d 315, 317B18 (Tex.
App.CHouston
[14th Dist.] 2002, no pet.), Upton County v. Brown, 960 S.W.2d 808, 811B12 (Tex.
App.CEl Paso
1997, no pet.), and Beiser v. Tomball Hosp. Auth., 902 S.W.2d 721, 723
(Tex. App.CHouston [1st Dist.] 1995, writ
denied) (op. on reh=g), because in each of those
cases, the employer received actual notice that its employee believed he or she
had been fired in retaliation for reporting illegal activities).  But cf. Moore v. Univ. of Houston-Clear
Lake, 165 S.W.3d 97, 102B03 (Tex.
App.CHouston
[14th Dist.] 2005, no pet.) (noting in dicta that the Whistleblower Act does
not require that the employee use any particular words when filing his
grievance or state that his appeal is based on the Whistleblower Act; however,
the evidence relevant to jurisdiction suggested that UHCL had actual notice of
Moore=s
whistleblower claims prior to his termination).








2.  The Notice in Issue

We
conclude from the evidence presented to the trial court that the communications
between McQuary and the sheriff in no way put the sheriff on notice that a
Whistleblower Act claim was being asserted. 
See Smith, 181 S.W.3d at 846, 850.  In fact, the only complaints McQuary made in
the documents she submitted to the sheriff were that she had not received any
evaluations and that Chief Knowles had told her to disregard her job
description. The overall subject and tenor of the communications was that she
would like to continue her employment with the department, preferably directly
under the sheriff=s supervision, and that she had
no hard feelings toward anyone.  This
constitutes no notice of a Whistleblower Act claim.  See Robison, 216 S.W.3d at 44; Smith,
181 S.W.3d at 846, 850.

3.  Prevention

McQuary complains that, if notice was required,
she was excused from that requirement because her efforts to give notice were
thwarted.  She refers us to Rivera
in support of this argument.  Rivera
states, in pertinent part,

 








If the attempts by an employee to comply with the
entity=s grievance procedures
were effectively thwarted by the entity=s refusal to meet, the purpose of the statute
would be frustrated, particularly if the entity was allowed to proclaim that
the employee did not exhaust her administrative remedies under the Act.  Fort Bend ISD cannot, on the one hand, refuse
to meet with an employee as required by the policy, and then, on the other
hand, complain that the employee failed to follow the policy.     

 

93 S.W.3d at 320.  

In Rivera,
the Fort Bend ISD principal, the source of Rivera=s
complaint and Rivera=s direct supervisor, refused to
meet with Rivera after Rivera reported to her that the principal=s
falsification of the enrollment documents for the principal=s niece
and another employee=s child violated the law.  Id. at 317B18. This
meeting was required by the grievance procedure, and the procedure was silent
as to Awhat to
do if one=s >Level
One=
supervisor refuses to grant the employee a meeting.@  Id. at 317 & n.2, 320.  Further, the human resources department
initially did not provide guidance and advised her to quit.[4]  Id. at 318, 320.  As noted by the court, Aa
terminated employee=s claims will not be barred by
the statutory requisites of the [W]histle-[B]lower [A]ct@ if the
grievance policy is unclear.  Id.
at 320B21.  








The
facts in Rivera are not the facts before us.  McQuary was required to communicate her appeal
to the sheriff and did so.  Those
communications were not restricted in any way. 
That is, rule 8.08, under which McQuary could appeal the original
termination decision, does not specify any particular form or format for either
her appeal or the sheriff=s decision, nor is there any
mention of whether any sort of hearing or face-to-face meeting should be
held.  All means of communication,
therefore, were available to McQuary to convey the belief that her termination
was related to her alleged reports of violations of the law.  Thus, when she felt that the sheriff did not
effectively meet with her in their face-to-face meeting after he reviewed her
written communications, nothing kept McQuary from requesting another
face-to-face meeting or from communicating further in writing.  Under these circumstances, we cannot say that
she was thwarted in her efforts to follow the grievance procedure. Accordingly,
we sustain Tarrant County=s sole issue.

IV. 
Conclusion

Having
determined that the trial court erred by denying the plea to the jurisdiction,
we reverse the trial court=s order
and render judgment granting Tarrant County=s plea
to the jurisdiction. 

 

BOB MCCOY

JUSTICE

 

PANEL: WALKER, MCCOY, and MEIER, JJ.

 

DELIVERED: April 1, 2010











[1]Civil Service Rule 8.08
states, in pertinent part, 

 

(1) The employee on
probation who receives . . . a notice of termination, may appeal to the Sheriff
within five (5) working days.  

(2) The Sheriff shall
have ten (10) working days to review the appeal.  

 

(3) The decision of the
Sheriff shall be final in cases of original . . . probation.





[2]The email stated:

 

I hope that you had a
good holiday with your family.  I have
spoken to Stacy regarding the release of claims document.  She told me that you were standing by the
number of 4,200 for my release.  I am
sincerely asking you to please reconsider. 
I know that you have a good heart and that is why I am even asking
again.  It would help my family out
tremendously with the upcoming holidays and such to have the extra monies to
keep us afloat for a little while. 
Again, I am sincerely asking to please, please reconsider.  When I spoke to Greg he said that you were
able to, but had to make the decision.  I
enjoyed working with you and the organization and am truly sorry for the way
things worked out.

 

Please let me know so I
may come to the District to finalize ever[y]thing.

Smith, 181 S.W.3d at 846.  She ultimately rejected the severance
offer.  Id. 





[3]During the hearing,
Farrar told the committee:

 

[O]n April 16th, Monday
morning Commissioner said that if I find out who is doing this [reporting the
commissioner=s orders to dump barrels
containing unknown substances] I will fire [th]em and then he retracted his
statement and I will get [th]em fired . . . . 
And also on . . . July 16 it was repeated and I would
like to know why and his statement Alack of loyalty to employees@ that=s here in the manual in a
threatening way.

 

Farrar, 933 S.W.2d at 771,
774.  Farrar=s claim was ultimately
dismissed for failure to comply with the then-existing exhaustion requirement
under the statute.  Id. at 776B77.





[4]A[W]hen Human Resources
finally did provide some guidance to Rivera=s daughter, even that advice-to proceed to >Level Two=-Fort Bend ISD admitted
was incorrect, and thus, was entirely unclear.@  Rivera, 93 S.W.3d at 320.