IN THE SUPREME COURT OF TEXAS
 
════════════
No. 08-0215
════════════
 
 
University of Texas 
Southwestern Medical Center
at Dallas, 
Petitioner,
 
v.
 
The Estate of Irene Esther 
Arancibia by its Beneficiary
Victor Hugo Vasquez-Arancibia, Victor Hugo Vasquez-Arancibia, Individually, and Cecilia Vasquez-Arancibia, 
Individually, 
Respondents
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Fifth District of Texas
════════════════════════════════════════════════════
 
Argued September 10, 2009
 
            
Chief Justice Jefferson delivered 
the opinion of the Court, joined by Justice Hecht, Justice Medina, Justice Green, 
Justice Willett, Justice Guzman, and Justice Lehrmann.
 
            
Justice Johnson delivered a 
dissenting opinion, joined by Justice 
Wainwright.
 
            
This appeal turns not on the merits of the underlying claim but on 
whether prerequisites to suit have been satisfied, and if not, whether an 
interlocutory appeal is available. Because the relevant requirements were met 
here, and because interlocutory appeal was appropriate, we affirm the court of 
appeals’ judgment.
I. Background
            
Irene Arancibia underwent laparoscopic hernia 
surgery at Parkland Memorial Hospital on September 4, 2003. The procedure was 
performed by two resident physicians, Drs. Curtis and Yau, and attended by Dr. Watson, an assistant professor of 
surgery in the gastrointestinal/endocrine division, Department of Surgery, at 
U.T. Southwestern in Dallas. Arancibia was discharged 
later that day. Two days later, she presented to Parkland’s emergency room with 
severe abdominal pain. Emergency surgery revealed that, during the hernia 
repair, her bowel had been perforated in two places, leading to acute 
peritonitis with sepsis. She died the following day.
Her family 
initially sued the operating physicians but later nonsuited them, naming Southwestern and Parkland in their 
stead. Southwestern moved to dismiss the case, contending that the trial court 
lacked jurisdiction because the Arancibias failed to 
provide timely notice of their claim. The trial court denied the plea, and the 
court of appeals affirmed. 244 S.W.3d 455, 462. We 
granted the petition for review, 52 Tex. Sup. Ct. J. 910, 911 (June 26, 2009), 
and now affirm.
II. The 2005 
amendment to Government Code section 311.034 applies.
            
Absent a waiver, governmental entities, like Southwestern, are generally 
immune from suits for damages. Reata Constr. Corp. v. City of 
Dallas, 197 S.W.3d 371, 374 (Tex. 
2006). The Texas Tort Claims act waives immunity from suit “to 
the extent of liability created by [the Act].” Tex. Civ. Prac. & Rem. 
Code § 101.025(a). To 
take advantage of this waiver, the plaintiffs must notify the government of a 
claim within six months. Id. § 101.101(a). The 
notice must reasonably describe the injury, the time and place of the incident, 
and the incident itself. Id. But this formality is not required “if the 
governmental unit has actual notice that death has occurred [or] that the 
claimant has received some injury.” Id. § 
101.101(c).
            
In 2004, we concluded that the notice requirements were mandatory, rather 
than jurisdictional, and that there was no interlocutory appellate jurisdiction 
over an order that denied a governmental unit’s jurisdictional plea based on a 
claimant’s failure to provide notice. See Univ. of Tex. Sw. 
Med. Ctr. v. Loutzenhiser, 140 S.W.3d 351, 365-66 
(Tex. 2004). Shortly thereafter, the Legislature amended the Government 
Code to provide that “[s]tatutory prerequisites to a 
suit, including the provision of notice, are jurisdictional requirements in all 
suits against a governmental entity.” Tex. Gov’t Code § 311.034. The 2005 amendment 
did not change those statutory prerequisites; it merely stated the consequence 
of a failure to comply with them. The amendment took effect September 1, 2005. 
Act of May 25, 2005, 79th Leg., R.S., ch. 1150, § 2, 
2005 Tex. Gen. Laws 3783, 3783.
            
Southwestern then filed a plea to the jurisdiction, contending that it 
had no pre-suit notice (formal or actual) of the Arancibias’ claim. The court of appeals did not reach this 
issue, because it held that this case, filed years before the 2005 amendment, 
was not governed by its terms—an issue that has led to considerable disagreement 
among our courts of appeals (including a split between Houston’s First and 
Fourteenth Districts).[1]
            
If the amendment applies, a lack of notice would be jurisdictional, 
meaning that the trial court could dispose of the case on a plea to the 
jurisdiction, and a governmental unit would have a statutory right of 
interlocutory appeal if the plea failed. Tex. Civ. Prac. & Rem. Code § 
51.014(a)(8); Loutzenhiser, 140 S.W.3d at 359. If the requirement 
is merely mandatory, a governmental unit would be entitled to summary judgment, 
but the trial court’s denial of that motion could not be immediately appealed, 
and the governmental unit could waive the issue. Loutzenhiser, 140 S.W.3d at 
359.
            
The Legislature did not state whether the amendment applied prospectively 
or retroactively, nor did the act contain a savings clause for pending suits. 
The amendment merely provided that it “takes effect September 1, 2005.” Act of 
May 25, 2005, 79th Leg., R.S., ch. 1150, § 2, 2005 
Tex. Gen. Laws 3783, 3783. We presume the statute is prospective unless 
expressly made retrospective. See Tex. Gov’t Code § 311.022.
            
But the prospectivity presumption does not 
necessarily answer whether the amendment governs this suit. Another rule 
provides that a court is to apply the law in effect at the time it decides the 
case. See Bradley v. Sch. Bd. of the City of Richmond, 416 U.S. 696, 711 
(1974); Tex. Mun. Power Agency v. 
Public Utils. Comm’n 
of Tex., 253 S.W.3d 184, 198 (Tex. 2007)(explaining 
that jurisdictional statutes should be applied as they exist at the time 
judgment is rendered); see also Landgraf v. USI 
Film Prods., 511 U.S. 244, 264 (1994)(noting the “apparent tension” between 
these two maxims). On closer examination, however, these two rules can be 
reconciled. See Landgraf, 511 U.S. at 273 
(noting that “[e]ven absent specific legislative 
authorization, application of new statutes passed after the events in suit is 
unquestionably proper in many situations”). A statute does not operate 
retroactively merely because it is applied in a case arising from conduct 
predating the enactment. Id. at 
269.
            
The prohibition against retroactive application of laws does not apply to 
procedural, remedial, or jurisdictional statutes, because such statutes 
typically do not affect a vested right. Tex. Mun. Power Agency, 253 
S.W.3d at 198. Because application of a new jurisdictional rule generally 
takes away no substantive right but simply impacts a tribunal’s power to hear 
the case, present law normally governs in such situations. Landgraf, 511 U.S. at 273 (“When the intervening 
statute authorizes or affects the propriety of prospective relief, application 
of the new provision is not retroactive.”). Thus, the Supreme Court of the 
United States has “regularly applied intervening statutes conferring or ousting 
jurisdiction, whether or not jurisdiction lay when the 
underlying conduct occurred or when the suit was filed.” Id. at 274. Statutes—like section 311.034—that do not 
deprive the parties of a substantive right and “speak to the power of the court 
rather than to the rights or obligations of the parties” may be applied to cases 
pending at the time of enactment. Id. at 274-75 (noting 
that “[c]hanges in procedural rules may often be 
applied in suits arising before their enactment without raising concerns about 
retroactivity”) (citations omitted). We agree that it is appropriate to 
do so here, and such a construction is not retroactive. See Quick v. City of 
Austin, 7 S.W.3d 109, 132 (Tex. 
1999).
            
Because the amendment applies, the purported failure to provide notice 
would deprive the trial court of jurisdiction, an issue that may be raised on 
interlocutory appeal. We now turn to Southwestern’s 
contention that it lacked actual notice under the Act.
III. 
Southwestern had actual notice under Government Code section 
101.101(c).
            
The Tort Claims Act states that formal notice is not required “if the 
governmental unit has actual notice that death has occurred, that the claimant 
has received some injury, or that the claimant’s property has been 
damaged.” Tex. Civ. Prac. & Rem. Code § 
101.101(c). But we have rejected an interpretation of 
actual notice that would “require[] only that a 
governmental unit have knowledge of a death, an injury, or property damage,” 
because a defendant, like a hospital, would then have “to investigate the 
standard of care provided to each and every patient that received treatment,” 
eviscerating the notice requirement’s purpose. See Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995) 
(emphasis added). Instead, we held that the governmental unit had to know of its 
“alleged fault producing or contributing to the death, injury, or property 
damage.”[2] Id. This 
standard led to some confusion among our courts of appeals,[3] and we explained it further in Texas 
Department of Criminal Justice v. Simons, 140 S.W.3d 338 (Tex. 
2004):
 
What we intended in Cathey by the second requirement for actual 
notice was that a governmental unit have knowledge that 
amounts to the same notice to which it is entitled by section 101.101(a). That 
includes subjective awareness of its fault, as ultimately alleged by the 
claimant, in producing or contributing to the claimed injury.
 
Simons, 140 S.W.3d at 
347. We observed that, if a governmental unit had this awareness of 
fault, along with the other information to which it was entitled under section 
101.101(a), then requiring formal, written notice in addition would do nothing 
to further the statutory purposes of information gathering, settling claims, and 
preparing for trial.[4] 
Id.
            
We must, then, decide whether this record demonstrates Southwestern’s subjective awareness of its fault, as 
ultimately alleged by the Arancibias, in producing or 
contributing to Arancibia’s death. Although we have 
said that actual notice may be a fact question when the evidence is disputed, 
id. at 348, the pertinent facts here are 
uncontested. Dr. Watson was present during Arancibia’s 
laparoscopic hernia repair. The day after her death, Watson emailed his 
immediate supervisor, who was chief of the division. The email begins, “I wanted 
to give you a heads up on a terrible outcome with a Surgery A patient.” Watson 
described the surgery, which he believed went well, and Arancibia’s return to the emergency room two days later. A 
laparotomy at that time “showed an unrecognized bowel 
injury,” and Arancibia died the next day of multiple 
organ failure. Watson’s email concluded, “I have already spoken with risk 
mgt.”
            
Watson’s supervisor responded, thanking Watson for the notification and 
mentioning that he would forward the email to the Chair of the Department of 
Surgery. The Chair responded and discussed several of the reasons patients might 
present with symptoms more than twenty-four hours after surgery. His email 
began, “I heard about this today.”
            
Dr. Watson surmised that the bowel perforation “was a result of a 
retraction injury out of the field of view.” He stated that, in Arancibia’s subsequent surgery, the physician observed a 
“through and through hole in the jejunum.”[5] This was confirmed by the surgery 
records, which showed two perforations in the jejunum.
            
Shortly thereafter, upon reviewing Arancibia’s 
treatment, Watson’s supervisor concluded that “[a] technical error occurred 
during the original hernia operation resulting in a through-and-through small 
bowel injury” and that “[c]linical management 
contributed to” Arancibia’s death. He stated that 
“[a]lthough unfortunate, this is a recognized 
complication of laparoscopic hernia surgery. No standard of care issues were 
identified upon review.”
            
We conclude that this record shows that Southwestern was subjectively 
aware of its fault, as ultimately alleged by the Arancibias, in producing or contributing to Arancibia’s death. Although Dr Watson’s supervisor 
determined that there were no standard of care violations, he noted that a 
“technical error” was made, that clinical management contributed to Arancibia’s death, and that the care “was not necessarily 
consistent with established standards.” His ultimate conclusion that those 
errors were acceptable does not detract from his subjective awareness that 
medical error contributed to Arancibia’s death. It is 
true that, although Watson said he had contacted risk management, there was no 
evidence of why he did so or what he reported. But Watson and his superiors knew 
that Arancibia had died of multiple organ failure 
caused by sepsis, that her jejunum had been perforated in two places (an injury 
that Watson surmised probably occurred when surgical tools were being 
retracted), and that risk management had been alerted. Simons, 140 S.W.3d 
at 348 (noting that subjective awareness will often be proved, “if at all, by 
circumstantial evidence”).
            
Fault, as it pertains to actual notice, is not synonymous with liability; 
rather, it implies responsibility for the injury claimed. Thus, we have held 
that a police report showing that barricades were missing was not evidence of a 
governmental unit’s subjective awareness of its fault after an accident, because 
“a private contractor or another governmental entity (such as the county or 
state) could have been responsible for the [missing barricades].” City of Dallas v. Carbajal, 53 Tex. 
Sup. Ct. J. 715, 716 (May 7, 2010) (per curiam). But that cannot be the case when the sole 
instrumentality of harm is the government itself. Here, the government has 
conceded that its surgical error perforated Arancibia’s intestine, resulting in sepsis, multiple 
organ failure, and death. A jury may absolve the government of liability for 
that death for any number of reasons. But a government cannot evade the 
determination by subjectively refuting fault. We cannot conclude that 
Southwestern was unaware of its fault in producing or contributing to the injury 
alleged.
            
Under the dissent’s approach, only an unqualified confession of fault 
would provide actual notice of the incident. The dissent would conclude that 
because Southwestern’s internal investigation found no 
breach of the standard of care, Southwestern could not have been aware of its 
fault in producing or contributing to Arancibia’s 
death. But “fault” as required under Simons is not fault as defined by the defendant, but rather “as 
ultimately alleged by the claimant.” Simons, 140 S.W.3d at 347 
(emphasis added). Here, the Arancibias alleged that 
physician error led to Arancibia’s perforated 
intestine and, ultimately, her death. That Southwestern was aware that its 
surgeons’ errors caused those perforations and that clinical management 
contributed to her death is undisputed.
            
The purpose of the notice requirement is “to enable governmental units to 
gather information necessary to guard against unfounded claims, settle claims, 
and prepare for trial.” Cathey, 900 S.W.2d at 341. The notice here satisfied that 
requirement; “requiring formal, written notice in addition would do nothing to 
further the purpose of the statute.” Simons, 140 S.W.3d 
at 347. Indeed, such notice would state exactly what Southwestern already 
knew. And while a bad result, in and of itself, is not 
evidence of a breach of the standard of care, the proof of actual notice in this 
case went beyond the mere fact of Arancibia’s death. 
Viewing the evidence in the light most favorable to the Arancibias, as we must,[6] Southwestern had actual notice as 
required by section 101.101(c).
IV. We need not reach the 
question of whether a party may raise on interlocutory appeal an issue of 
sovereign immunity that it failed to raise in the trial court.
 
            
Even assuming that it had the requisite notice, Southwestern contends 
that the Arancibias did not substitute it as a party 
within thirty days of Dr. Watson’s motion to dismiss under Tort Claims Act 
section 101.106. See Tex. Civ. 
Prac. & Rem. Code § 
101.106(f). Because Southwestern failed to raise this 
argument in the trial court, the court of appeals refused to consider the issue 
on interlocutory appeal. 244 S.W.3d at 461. 
Southwestern challenges this conclusion and argues that because we have held 
that immunity implicates subject matter jurisdiction, we may reach on 
interlocutory appeal issues the parties failed to raise in the trial court. The 
Arancibias disagree, contending that immunity is 
different from standing, ripeness, or other matters involving subject matter 
jurisdiction, and interlocutory appeal is different from final 
judgment.
            
We need not resolve this issue today. The 101.106 argument fails as a 
matter of law even if Southwestern could raise the issue for the first time on 
interlocutory appeal.
V. Dr. 
Watson’s answer was not a 101.106 motion.
            
Section 101.106(f) requires that “[o]n the employee’s motion, the suit 
against the employee shall be dismissed” unless amended pleadings naming the 
governmental unit as a defendant are filed within thirty days. Tex. Civ. Prac. & Rem. 
Code § 101.106(f). Dr. 
Watson moved to dismiss the case against him on January 20, 2005. Eight days 
later, the Arancibias filed their amended petition 
naming Southwestern as a defendant.
            
Southwestern argues that the Arancibias failed 
to meet the thirty-day deadline because the last sentence of Dr. Watson’s answer 
(and his prayer), filed months earlier, mentioned 101.106 and prayed for 
dismissal. Southwestern urges us to treat Watson’s general denial as if it were 
a 101.106 motion, triggering the thirty-day amended pleading 
deadline.
            
We conclude that Southwestern’s general denial 
was not a 101.106(f) motion. Section 101.106(f) lists several prerequisites that 
must be satisfied before an employee is entitled to dismissal. The employee must 
show that the suit was filed against him based on conduct within the general 
scope of his employment and that it could have been brought under chapter 101 
against the governmental unit only. See id. Watson’s motion attached an 
affidavit stating he was acting within the scope of his employment with 
Southwestern; his answer did not.
            
Watson’s motion incorporated portions of Arancibia’s petition and argued that the claims she alleged 
were ones that could have been brought against Southwestern in the first 
instance; his answer did not.
            
Watson’s motion was entitled “Motion to Dismiss Pursuant to TCPRC Section 
101.106”; his answer was not.[7]
            
The motion attached a blank fiat setting the matter for hearing; the 
answer did not.
            
The parties’ Rule 11 agreement stated that Dr. Watson would not file a 
101.106(f) motion before January 31, 2005 (long after he had filed his answer). 
While that agreement has no bearing on whether the answer was a motion, it shows 
that the parties certainly did not consider it as such. Nor do we.
            
Watson’s answer bears little resemblance to the motion he filed 
subsequently. Pleadings must give fair notice of a claim, and we must construe 
them “so as to do substantial justice.” 
Tex. R. Civ. P. 45. Construing the answer as a 101.106(f) motion would 
not comport with this rule. Even assuming Southwestern’s 101.106 complaint 
was properly before us, Watson’s answer was not a motion to dismiss under 
section 101.106(f).
VI. 
Conclusion
            
Southwestern had the right of interlocutory appeal, but it also had 
actual notice and a timely substitution after a section 101.106 motion. We 
affirm the court of appeals’ judgment. Tex. R. App. P. 60.2(a).
 
                                                                                                            
___________________________
                                                                                                            
Wallace B. Jefferson
                        
                                                                        
Chief Justice
 
 
Opinion Delivered: October 22, 2010










[1] 244 
S.W.3d at 459 (holding that amendment was “not retroactive”); compare Howard 
v. Harrell, No. 07-08-0013-CV, 2009 Tex. App. LEXIS 2322, *10-11 (Tex. 
App—Amarillo Mar. 31, 2009, no pet.)(amendments to 
section 311.034 do not apply to case filed before statute enacted), and 
Dallas Cty. v. Posey, 239 
S.W.3d 336, 339 (Tex. App.—Dallas 2007) (same), vacated on other grounds, 
Dallas Cty. v. Posey, 290 S.W.3d 869, 872 n.1 
(Tex. 2009) (per curiam), and Tex. Tech Univ. 
Health Sci. Ctr. v. Lucero, 234 S.W.3d 158, 166 (Tex. App.—El Paso 2007, 
pet. denied) (same), and Baylor Coll. of Med. v. Hernandez, 208 S.W.3d 4, 
8 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (same) with Tex. Dep’t 
of Criminal Justice v. Thomas, 263 S.W.3d 212, 218 (Tex. App.—Houston [1st 
Dist.] 2007, pet. denied) (amendment applies to case filed before enactment), 
and Med. Arts Hosp. v. Robison, 216 S.W.3d 38, 41 (Tex. App.—Eastland 
2006, no pet.) (same), and Tex. Dep’t of Criminal 
Justice v. Simons, 197 S.W.3d 904, 906-07 (Tex. App.—Beaumont 2006, no 
pet.)(same); see also Hon. Scott Brister, Is It Time To Reform Our Courts of Appeals?, 
40 Hous. Law. 22, 25 (Mar./Apr. 2003) 
(noting that “conflicting interpretations of the law are especially acute in 
Houston, due both to the volume of litigation in Harris County and the larger 
uncertainty as to who will hear the appeal”). This conflict gives us 
jurisdiction over this interlocutory appeal. Tex. Gov’t Code § 22.225(c), (e).

[2] We also 
held that actual notice required that the governmental unit know of the death, 
injury, or damages claimed, as well as the identity of the parties involved. 
Cathey v. Booth, 900 
S.W.2d at 341. Southwestern does not dispute that it had notice of those 
matters in this case.

[3] 
See Tex. Dep’t of Criminal Justice v. Simons, 140 S.W.3d 
338, 345-48 (Tex. 2004) (collecting cases).

[4] We did 
not decide whether the TDCJ had actual notice of Simons’s claim because, in a case decided the same day as 
Simons, we held that a claimant’s failure to provide notice did not 
deprive the trial court of jurisdiction. See Simons, 140 S.W.3d at 348-49 
(citing Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser, 140 S.W.3d 351 (Tex. 2004)).

[5] The 
jejunum is “the first two fifths of the small intestine beyond the duodenum usu. 
merging almost imperceptibly with the ileum though somewhat larger, 
thicker-walled, and more vascular and having more numerous circular folds and 
fewer Peyer’s patches.” Webster’s Third New 
International Dictionary 1213 (2002).

[6] See 
Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 
217, 228 (Tex. 2004).

[7] It was 
titled “Original Answer, Abatement and Special Exceptions to Plaintiffs’ 
Original Petition.”